GREGORY, Plaintiff and Respondent, v. ANDERSON, Defendant: INDUSTRIAL COMMISSION, Appellant.

*May 5—June 9, 1961.*

132

134

For the appellant Industrial Commission there was a brief and oral argument by *Arnold J. Spencer,* chief counsel of the unemployment compensation division.

For the respondent there was a brief by *Roberts, Boardman, Suhr, Bjork & Curry,* attorneys, and *Kenneth T. McCormick, Jr.,* of counsel, all of Madison, and oral argument by *Mr. Glenn D. Roberts* and *Mr. McCormick.*

CURRIE, J. The issue before us on this appeal is whether the employee Anderson was discharged "for misconduct connected with his employment" within the meaning of sec. 108.04 (5), Stats., so as to bar him from unemployment compensation benefits for the period of his unemployment following his discharge.

This court in *Boynton Cab Co. v. Neubeck* (1941), 237 Wis. 249, 259, 296 N. W. 636, declared:

". . . the term 'misconduct' as used in sec. 108.04 (4) (a) [now sec. 108.04 (5)], Stats., is limited to conduct evincing

such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, . . ."

This same test of misconduct under state unemployment compensation acts is set forth in 48 Am. Jur., Social Security, Unemployment Insurance, Etc., p. 541, sec. 38, and Anno. 146 A. L. R. 243.

There is no question but that the drinking of the four bottles of beer by Anderson on the night of October 4, 1958, in the apartment of the lady restaurant operator not only violated a rule of employment of the employer, but also the special agreement the employee signed on April 10, 1957, which constituted part of the employment contract. The crucial question is whether a deliberate violation of such rule and covenant of employment constituted a wilful disregard of the employer's business interests. If it did, then it follows as a matter of law that it was misconduct connected with the employment.

Because of the nature of certain employments, conduct of employees during off-duty hours may harm or tend to harm the interests of the employer. A few examples will suffice to demonstrate that this is so. A merchant might be harmed if a clerk employed by him should make statements to customers, and prospective customers, disparaging the quality of merchandise sold by the merchant, although such statements were made at social functions when the employee was off duty. A Y.M.C.A. secretary, who, while outside of his hours of employment, patronizes taverns selling intoxicating liquor, would tend to injure the interests of the organization employing him, which organization seeks to build good character among the youth of the community. Bank tellers, who outside of their working hours, gamble on horse races or speculate (not invest) in the stock market, probably are

more likely to be tempted to embezzle funds of the bank than those tellers who do not. A rule of the particular employer, which forbids any of these off-duty employee activities covered in these three illustrations, would be a reasonable one, and discharge for violation thereof would be for misconduct connected with the employment within the meaning of sec. 108.04 (5), Stats.

In order for violation of a rule laid down by the employer to constitute misconduct under such statute, such rule must be a reasonable one. When such rule relates to conduct of the employee during off-duty hours, it must bear a reasonable relationship to the employer's interests in order to be reasonable.

When is the reasonableness of the rule to be tested for its relationship to the business interests of the employer, at the time of making of the rule, or at the time of violation thereof by the employee? To bring this issue into sharper focus let us examine two assumed fact situations. For our first illustration, we will take the case of the merchant who promulgates a rule that no employee shall on or off the job say anything to a prospective customer disparaging the quality of merchandise sold in the employer's store. Employee A tells prospective customer B at a social gathering that A's employer sells inferior merchandise in his store thus violating the rule. Nevertheless, B pays no attention to such statement and buys his requirements of merchandise from A's employer. As our second example, a bank employing teller C has a rule that its bank tellers shall not gamble on horse races. C violates such rule but all of his racing bets are placed by him outside of his hours of employment. At the time of detection of the rule violation, C has embezzled none of the bank's funds. Thus in both of these illustrations the employer's business interests had not been harmed at the time the violations of rules occurred.

These illustrations demonstrate that, whether a violation of this type of rule constituting part of the contract of employment constitutes misconduct within the meaning of sec. 108.04 (5), Stats., should not depend upon the fortuitous circumstances that such violation resulted in no actual harm to the business interests of the employer. It necessarily follows that the reasonableness of such a rule must be tested as of the time of its adoption. It is a reasonable rule if a violation is reasonably likely to harm the employer's business interests.

The mistake of law committed by the appeal tribunal in the instant case was to test the reasonableness of the requirement in Anderson's employment contract, that he was not to drink alcoholic beverages on or off the job, as of the time of violation. This is apparent from the appeal tribunal's finding, "There is no evidence that the employer's insurance coverage was jeopardized by the employee's private drinking habits." In other words, because the insurance company did not cancel the employer Gregory's motor vehicle liability insurance as a result of Anderson's drinking incident of October 4, 1958, Anderson's violation of his agreement did not constitute misconduct.

The facts set forth in the statement-of-facts portion of this opinion are wholly undisputed, and give rise to but one reasonable inference as to the situation which existed at the time Gregory's rule against drinking intoxicating beverages was incorporated into Anderson's employment contract on or about April 10, 1957. Therefore, the circuit court properly held that only a question of law is presented as to whether Anderson was discharged for misconduct connected with his employment. *Cutler-Hammer, Inc., v. Industrial Comm.* 13 Wis. (2d) 618, 109 N. W. (2d) 468.

Prior to that time Gregory had experienced difficulty in procuring automobile liability insurance on his motor vehicles. One insurance company had canceled his insurance

without voicing any reason therefor. Another refused to accept the coverage. Then on contacting Klipstein, a general insurance agent, Gregory learned that he was considered a poor insurance risk because his employees, who drove trucks and serviced vending machines, were required to service machines located in taverns dispensing alcoholic beverages. In order to persuade Klipstein to induce the Iowa National Company to write the risk, Gregory informed Klipstein that the former had adopted a rule that such employees must not drink alcoholic beverages on or off duty. Klipstein relayed this information by telephone to the Iowa National in Gregory's presence. As before noted, Klipstein was of the opinion that the information concerning the enforcement of such rule by Gregory was an important factor in inducing Iowa National to agree to write the insurance. Gregory only enforced such rule against those employees who had to service vending machines in taverns, and excluded therefrom office and supervisory personnel who did not drive vehicles and do such servicing in taverns.

Anderson, when hired by Gregory, was informed by the latter that he had an agreement with his insurance company that depended on his drivers' not drinking on or off the job. Anderson knew, when he signed the letter pledging that he would not drink alcoholic beverages, that this was being required of him because of such agreement with the insurance company. Such agreement with the insurance company relates to the verbal statement made by Gregory to Klipstein and relayed by the latter in Gregory's presence by phone to Iowa National. It was conceded by Klipstein on cross-examination that such agreement was not legally enforceable by Iowa National. However, Iowa National could cancel Gregory's insurance coverage at any time, and it is only reasonable that Gregory should have assumed that such company would be more likely to exercise such right if Gregory employed a drinker to drive one of his trucks and

service vending machines in taverns than would be the case if all employees performing such duties were abstainers.

The significant fact is that Anderson, when he violated the rule and contract requirement against drinking, knew that such rule, in so far as he was concerned, had its inception in Gregory's attempt to keep his own pledge given to Iowa National, and, therefore, that such violation might harm the business interests of Gregory. Whether it actually did have such result is immaterial.

Under the unique circumstances of this case we deem the rule against drinking, which Anderson had covenanted in writing to observe, was a reasonable rule connected with his employment. Therefore, a violation thereof constituted such misconduct as would bar him from unemployment compensation benefits for the period of his unemployment that resulted from his discharge for such violation.

*By the Court.*—Judgment affirmed.

FAIRCHILD, J. (*dissenting*). If it could be said that existence and enforcement of a rule against all drinking did, or probably would, materially affect the judgment of an insurer in deciding to write insurance for Gregory, or maintain it in force, and since the nature of the business does make it difficult to obtain insurance, at best, a denial of benefits for violation of the rule would seem proper. The record here does show that some companies will not insure trucks used in this type of business in any event; that other companies had canceled insurance, and that Iowa National was informed of the rule against drinking along with other facts concerning Gregory's business before it agreed to issue the policy. Klipstein did not describe the negotiations with Iowa National in any detail, although he stated his conclusion that the rule had a decided bearing as far as acceptance of the risk was concerned. Perhaps this evidence would be sufficient to sustain a finding that off-hour drinking by Gregory's

drivers would jeopardize his insurance, but it does not conclusively establish that fact. The commission found to the contrary, Gregory had the burden of proof, and the commission's finding should be sustained.

I am authorized to state that Mr. Justice BROADFOOT joins in this opinion.

DIETERICH, J. (*dissenting*). This issue is: Is there any credible evidence to sustain the commission's finding that the employee's off-duty drinking, which violated his agreement with his employer, did not constitute "misconduct connected with his employment?"

Clearly, the employee's voluntary off-duty consumption of intoxicants, as prohibited by the agreement, constituted misconduct but it was not misconduct *connected with his employment* unless such prohibition bore a reasonable relationship to his employer's business interest.

The interest protected was the employer's insurance coverage and a rule prohibiting conduct which could, or would jeopardize such insurance coverage would indeed be reasonable. Likewise, a rule prohibiting conduct which could not jeopardize such coverage would not be reasonable.

The record discloses that some companies will not insure trucks used in this type of business in any event; that other companies had canceled insurance, and that Iowa National was informed of the rule against drinking along with other facts concerning the employer's business before it agreed to issue the policy. The employer and insurance sales agent testified that the rule may have had a bearing as far as acceptance of the risk was concerned. However, there is no evidence that Iowa National required such a rule or adherence thereto as a condition precedent to issuing or continuing its insurance coverage.

It is also a fact that the insurance coverage only applied to business vehicles while being used on company business.

Thus, the risk which was being insured against could not have been enhanced by the employee's off-duty drinking unless he carried his intoxication onto the job. The record expressly negates this latter possibility.

The majority opinion cites several examples to establish the reasonableness of the rule and concludes from the evidence that as a matter of law, the rule was reasonable. A clerk's disparaging remarks would indeed affect his employer's sales as would a Y.M.C.A. secretary's off-duty drinking detract from the organization. Likewise, a bank teller who gambles himself into debt could easily be tempted to embezzle from the bank. In fact, gambling in this state is illegal and a bank would be justified in discharging a teller who so violates the law. These examples are not analogous for the reason that each bears a reasonable relationship to the employer's business interest whereas in the instant case that is the precise question before this court.

The employer had the burden of proof and the commission was the sole judge of the credibility of the witnesses and the sole arbiter of the facts. The commission found that the employer's rule did not bear a reasonable relationship to the employer's business interest and hence, violation of same did not constitute misconduct connected with his employment. There is credible evidence in the record to support the commission's findings which requires reversal of the judgment of the circuit court and the reinstatement of the decision of the commission.