**TEXAS EMPLOYMENT COMMISSION et al., Appellants,**

v.

**Tucker RYAN, Appellee.**

**No. 8101.**

Court of Civil Appeals of Texas, Texarkana.

May 9, 1972.

**173**

Sam Lane, Asst. Atty. Gen., Austin, for appellants.

William E. Wiggins, Texarkana, for appellee.

CHADICK, Chief Justice.

Tucker Ryan at nighttime while off duty, by his own admission, took an industrial oxygen bottle and its contents from the plant premises of his employer, W. S.

Dickey Clay Manufacturing Company, used some of the oxygen and returned the container early the next day. The plant superintendent terminated Mr. Ryan's employment when he thereafter appeared for work at his regular shift. Application was filed with the Texas Employment Commission by Mr. Ryan for unemployment compensation. Payment of compensation was protested by the employer. The processing of the claim and the procedures that were followed in its handling were regular and the pertinent substance of the Texas Employment Commission's final order reducing compensation by half is copied in the margin.[1]

Tucker Ryan timely brought suit in a District Court of Bowie County against the Texas Employment Commission and the employer to set aside the decision of the Commission, and for judgment against the Commission for the maximum benefit period of twenty-six weeks, as well as attorney fees. Following a nonjury trial in the District Court a judgment was entered finding the evidence insufficient to sustain the decision of the Commission, and decreeing that the appellee should recover full compensation for twenty-six weeks; in the language of the judgment it was ordered that Ryan " * * * do have and recover from the defendant his full twenty-six weeks of unemployment compensation as provided by law; for attorney fees in the amount of $250.00 and costs of court * * *."

The Attorney General of Texas as counsel for the Commission has briefed the two points of error next quoted:

"*Point of Error One.* The trial court erred in finding there was not substantial evidence to support the decision and findings of the Texas Employment Commission.

"*Point of Error Two.* The trial court erred in rendering judgment that appellee recover from the defendant attorney's fees in the amount of $250.00."

In oral argument in this court counsel for Ryan conceded error in the award of at-

1. "CASE HISTORY: The initial claim was approved for unemployment insurance for 26 weeks. The claimant, however, was totally disqualified for a misconduct discharge. The claimant appealed, and the Appeal Tribunal affirmed.
The claimant has now appealed to the Commission.
"FINDINGS OF FACT: The claimant last worked for the above employer for about 21 months to on or about October 22, 1970. He was employed as a forklift operator and laborer. According to the claimant, during the early evening of a Sunday night in the latter part of October, 1970 he took an oxygen bottle from the company premises for personal purposes to use in connection with a cutting torch. After he had used a portion of the oxygen from the bottle, he returned the bottle to the company on the same Sunday evening. The following morning, he reported to the plant superintendent what he had done and offered to pay for the use of the oxygen or to replace the entire bottle. After some consultation, the plant superintendent informed the claimant that he would be required to resign or be discharged. The claimant did not desire to resign and for this reason was discharged for removing the oxygen bottle from the company premises without permission.
"CONCLUSIONS: The evidence shows that the claimant did remove the oxygen bottle from the company premises without permission as this was his testimony at the hearing. The record also shows, however, that the claimant did voluntarily report the matter to the plant superintendent and offered to pay for the material which he had used or to replace the entire bottle if the employer would permit. The claimant was discharged from his last work with the above employer for misconduct connected with the work, and he is subject to disqualification under the provisions of Section 5(b) of the Act. Under the circumstances related, however, the Commission is of the opinion that a disqualification of 13 weeks is sufficient. The decision of the Appeal Tribunal will be modified accordingly.
"DECISION: The decision of the Appeal Tribunal disqualifying the claimant 26 weeks under the provisions of Section 5(b) of the Act is modified, and the claimant is here disqualified 13 weeks under the provisions of Section 5(b) of the Act."

torney fees. The second point is sustained without further discussion.

There is evidence that Ryan took the oxygen bottle and used oxygen from it for his own purposes without permission from anyone having authority to grant him that favor. The Company's posted rules, which were read to employees when hired, prohibited employees from purloining company property. The implication of the Commission's conclusion that the claimant was "subject to disqualification under the provisions of Sec. 5(b) of the Act" is that the Commission was satisfied from the evidence presented to it that Ryan appropriated the Company's property by theft. The elements of theft, as that offense is defined in Texas Penal Code, Article 1410, were proven by evidence the Commission apparently accepted as true. Evidence tending to show a lack of criminal intent and mitigating the seriousness of Ryan's conduct appears to have been rejected by the Commission in deciding the company rule was breached, though allowance of one-half of full compensation indicates the mitigating circumstances were weighed when the effect of Ryan's conduct was considered.

■ The parties agree that in this case the decision of the Commission must be upheld, both in the trial court as well as on appeal, unless the party seeking to set aside the Commission's order succeeds, by evidence presented in the trial court, in demonstrating that the Commission's order is not reasonably supported by substantial evidence. These cases are cited in support of the proposition. Todd Shipyards Corp. v. Texas Employment Commission, 245 S. W.2d 371 (Tex.Civ.App. Galveston 1951, error ref'd, n. r. e.); Texas Company v. Texas Employment Commission, 261 S.W. 2d 178 (Tex.Civ.App. Beaumont 1953, error ref'd, n. r. e.); Nelson v. Texas Employment Commission, 290 S.W.2d 708 (Tex.Civ.App. Galveston 1956, error ref'd); Redd v. Texas Employment Commission, 431 S.W.2d 16 (Tex.Civ.App. Corpus Christi 1968, error ref'd, n. r. e.);

Texas Employment Commission v. Holberg, 440 S.W.2d 38 (Tex.Sup.1969); Texas Employment Commission v. Camacho, 394 S.W.2d 35 (Tex.Civ.App. Dallas 1965, no writ); Texas Employment Commission v. Keller, 456 S.W.2d 225 (Tex. Civ.App. Waco 1970, no writ). Generalized, the cases hold that when an appeal from the Commission's order is carried to the courts the Commission order is presumed to be valid and the burden is on a party appealing from the Commission's decision to show the order is not reasonably supported by substantial evidence. No weighing of facts may be made by the courts, and as a result the preponderance of the evidence is immaterial as the courts cannot substitute their judicial discretion for that of the Commission. Examination of the evidentiary record and the nature of the proof therein compels a conclusion that there is legal, competent, and sufficient testimony, that is to say, substantial evidence supporting the Commission's order, though one phase of such record justifies further comment.

A perplexing issue that is not touched upon or briefed by the parties is presented by the vital finding of the Commission that, "The claimant was discharged from his last work with the above employer for misconduct connected with the work * * *." The original act creating an unemployment compensation system has continuously carried a provision which, though frequently amended, is now codified as Tex.Civ.Stat.Anno. Art. 5221b–3, Subdivision (b), (1971) and now reads, with reference to the Commission's authority to disqualify a claimant for benefits, that:

"(b) If the Commission finds he has been discharged for misconduct connected with his last work. Such disqualification shall be for not less than one (1) nor more than twenty-six (26) benefit periods following the filing of a valid claim, as determined by the Commission according to the seriousness of the misconduct."

Mr. Ryan was a forklift operator and general laborer paid on an hourly basis. It was Sunday evening, a nonwork day, he was off duty and in no way engaged in any work for the Company when he went upon the plant premises and took the container of oxygen. Was this dereliction, this misconduct, connected with his work? A review of the authorities that tend to shed some light upon the question inclines this court to answer in the affirmative.

■ Research indicates that in all jurisdictions where the question of disqualification by misconduct connected with work[2] has been before courts, this language from 48 Am.Juris., Social Security, Unemployment Insurance, Etc., Sec. 38 (1943) has been accepted as a general rule, to-wit:

"Misconduct within the meaning of an unemployment compensation act excluding from its benefits an employee discharged for misconduct must be an act of wanton or wilful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employee's interest or of the employee's duties and obligations to the employer."

Purloining company property is a deliberate violation of the employer rules, and well might be broadly viewed as willful disregard of the employer's interest and disregard of the standards of behaviour which the employer has the right to expect of an employee. However, consideration independent of the employer's interest and the employee's expected behaviour may be omitted, as these factors appear to have been merged with the company work rule, or at least have not had independent Commission consideration. Nonetheless, the work rule presents complications. The posted rule prohibiting theft from the company appears to be a rule both of selection and of conduct. That is to say, the rule governs the employee's conduct while at his work, as well as setting forth a condition of employment and continuance therein. The rule was applied in this instance, however, not because of conduct on the job or connected with work performance, but because the rule was violated by the claimant while off duty. Clearly, the employer, so far as this record shows, was warranted in discharging the claimant for the breach of the rule, but that the Texas Employment Commission is warranted in refusing compensation because of *misconduct connected with the work* is a different question and must now be examined.

■ The language of Article 5221b–3 Subd. (b) must be construed in connection with the Unemployment Compensation Act in its entirety and the public policy that brought the system into being. It is a familiar rule that social and remedial legislation will be construed liberally to effectuate its purpose. 53 Tex.Jur.2d Statutes, Sec. 194 (1964). It is also a primary rule of construction that the legislative intent will be consulted in the interpretation of the language in a statute. 53 Tex.Jur. 2d Statutes, Secs. 162, 163 (1964). The first rule mentioned would require that the language, *misconduct connected with his last work*, be construed to exclude a claimant from compensation only when the rec-

<hr>

2. The Unemployment Compensation Acts of the various states have quite similar provisions in which misconduct *connected with employment* and *misconduct connected with work* disqualify a claimant from some or all benefits of the law. The text writers appear to equate the phrases *misconduct connected with work* and *misconduct connected with employment*. No case has been found in which a court has held the phrases to have identical or quite similar meaning. Standard works, such as 86 A.L.R.2d Anno.—Unemployment Compensation—Misconduct, 1013, et seq., and 81 C.J.S. Social Security and Public Welfare § 162 (1953), as well as 48 Am.Jur., Social Security, Unemployment Insurance, Etc., Sec. 38 (1943) appears to make no distinction, and the same usage appears in law review articles.

ord clearly demonstrates that misconduct detrimentally affected the performance of work, its quality or acceptability. Such limited view of the statute's meaning, though, must be tempered by the second rule mentioned. In the first section of the Unemployment Compensation Act, as it was enacted in 1936, is this statement of legislative purpose, to-wit:

"WHEREAS it is detrimental to the moral, civil and physical well-being of individuals to be sustained by charities and public grants. Past experience has further shown that oftentimes workers are unemployed through no fault of their own and of necessity, are required to live by public charities. It is the purpose of this legislation, *and the Legislature declares it to be the purpose of the State by this enactment to provide an orderly system of contributions for the care of the justifiably unemployed* during times of economic difficulty, thereby preserving and establishing self-respect, reliance, and good citizenship." (emphasis added)

In view of this expression of legislative intent and purpose, the language *misconduct connected with his last work* has a more than literal words aspect; the element of the justice of the discharge from work is superimposed. It is conclusive that the Legislature intended unemployment compensation only for those who are *justifiably unemployed*. Unquestionably, the no theft rule is connected with the work Mr. Ryan was doing for the company, because the rule has no application to nonemployed persons. It is only as an employee doing work for the company that the rule concerns the claimant. Thus, the language of the statute, in view of its purpose, comprehends more than misconduct in the performance of the work; it requires abstinence from conduct that would justify an employer in discharging an employee.

The only Texas case considering *misconduct in connection with work* that has been found is Texas Employment Commission v. Camacho, supra. The facts of

that case are so dissimilar to the facts in this case, and so obviously show misconduct connected with work that it is of little help in solving the question presented here. An out of state case having some factual resemblance to this under consideration is Employment Security Board of Maryland v. Lecates, 218 Md. 252, 145 A.2d 840 (1958). The claimant was a salaried supervisory employee who, by reason of his work, was entrusted with a key to the company's vehicular parking lot. Prior to the occasion in suit, this employee had "borrowed" a truck, used it and returned it. With respect to the incident in question, after completion of his duties and while off duty the employee took a truck from the parking lot and was later involved in a collision. The employee abandoned the truck and failed to report use of the truck or the mishap. As the case developed, it does not appear that unauthorized use of the truck alone was regarded as of controlling significance, rather the case appears to have turned upon the question of willful misconduct evidenced by violation of behaviour standards and indifference to the employer's interests. The court held the misconduct was connected with the work, saying:

"We think we may assume that the legislature did not intend to limit misconduct 'connected with' the employee's work to misconduct which occurred during the hours of employment and on the employer's premises. If it had, the language used would have undoubtedly expressed that intent. Since no such limitation was indicated, it is obvious the provisions of the statute were intended to deny unemployment compensation to a claimant who was discharged—and hence unemployed—because of misconduct regardless of when or where it occurred so long as such misconduct was in law connected with the employee's work."

The court summed up its findings in this way:

"In a case such as this—where the claimant gained access to the company's plant

by abusing a privilege he enjoyed as a responsible employee in a supervisory capacity—where his use of the truck he took was unauthorized—where he operated the truck without an operator's license, caused it to be involved in an accident, left the scene without identifying himself, and failed to report the accident for more than two days—we think the claimant's improper conduct constituted deliberate and willful misconduct 'connected with his work' within the meaning of the statute. * * * Such conduct demonstrated a lack of regard for his duties and obligations to his employer. And, of more concern to the employer, the misconduct was such as to adversely affect the employee's suitability to continue as a supervisor in the plant of his employer."

Another case considering the question of disqualifying misconduct is O'Neal v. Employment Security Agency, 89 Idaho 313, 404 P.2d 600 (1965). In this case, off-duty conduct was held to justify discharge. The claimant had been employed by the United States Post Office. He was "discharged from his employment by reason of the offenses with which he was charged and his having pleaded guilty to the charges." A regulation of the postal department permitted discharge for "infamous, dishonest, immoral, or notoriously disgraceful conduct, * * *." The court was ultimately required to come to grips with the question of whether or not the claimant was discharged for *misconduct in connection with his employment*. On consideration of public policy expressed in the enactment of the State's Employment Security Law, the court held that all the provisions of the Act must be read and construed within the spirit of expressed public policy. The court concluded that, "Claimant admitted violating the cited postal regulation which forbids infamous, dishonest, immoral and notoriously disgraceful conduct. An employer, be he public or private, has the right to expect his employees to refrain from acts which would bring dishonor on the business name or the institution," and up-

held the disqualification for unemployment compensation.

A third case which has been cited many times and in numerous jurisdictions is Gregory v. Anderson, 14 Wis.2d 130, 109 N.W.2d 675 (1961); 89 A.L.R.2d 1081. Misconduct consisted of claimant driving an automobile while under the influence of intoxicating liquor when off duty. The employer and employee had entered into an agreement that the employee would not conduct himself in this manner. The case is principally important in this instance as a holding that off-duty misconduct is connected with employment.

Though recognizing that there is other valid argument on both sides of the question discussed, the conclusion is reached that the first point of error should be sustained. It follows that the judgment of the trial court must be reversed and judgment rendered that appellee Ryan take nothing by his suit. It is so ordered.

DAVIS, J., not participating.