Chief Judge Breitel.
 

 These are three appeals argued together, each of the three claimants raising objection to the administrative application of the so-called doctrine of voluntary
 
 *494
 
 separation from employment by provoked discharge. Bach claimant, at one level or another of the procedure in the Division of Unemployment Insurance, was denied insurance benefits on the purported ground that each had provoked her discharge and had therefore terminated her employment voluntarily. In each case the Appellate Division affirmed the decision of the Unemployment Insurance Appeal Board and the claimants appeal by leave of this court.
 

 There should be an affirmance in each of the three cases. Although, the doctrine of provoked discharge has been improperly extended and applied by the division, on the findings of fact in each case, claimant by her misconduct had rendered herself and had been held by the division to be ineligible for unemployment insurance benefits until she first qualified herself by re-employment as provided in the applicable statute.
 

 The Unemployment Insurance Law (Labor Law, art. 18) provides,
 
 inter
 
 alia, that for a limited period measured by subsequent employment of not less than three days in each of four weeks or earnings of at least $200, one is ineligible to receive benefits, if the employee voluntarily left his employment or if the employee had been discharged for misconduct in connection with his employment (Labor Law, § 593).
 

 At one time there had been a difference in the disqualification periods for the two kinds of separation from employment noted above, a longer period of disqualification being imposed for misconduct discharges. Since 1958 the periods have been the same (L. 1958, ch. 387, § 15, amdg. Labor Law, § 593)..
 

 Be that as it may, the doctrine of provoked discharge had its origin hot in the statute but in
 
 Matter of Malaspina (Corsi)
 
 (309 N. Y. 413) and the special kind of discharge there involved. An employee was discharged by his employer because the employee had refused to join the union in an agency shop under á collective bargaining agreement. The act of the employee in refusing to join the union was therefore voluntary. The act of the employer was compelled by its obligation under the collective agreement. It was held that under such circumstances the employee, who had known of the requirement before employment and being fully aware of the inevitable consequences of his- refusal, had voluntarily left his employment by provoking his discharge. Arguably, this was a legitimate and essential
 
 *495
 
 gloss on the statute to fill a gap. It did not purport to, nor might it, create a third and distinct category for determining temporary ineligibility for unemployment insurance benefits (see, however, cases cited by respondent, which appear to have tolerated the unauthorized expansion of the doctrine:
 
 Matter of Gladstone
 
 [Catherwood], 30 N Y 2d 576;
 
 Matter of Edwards [Levine],
 
 39 A D 2d 644, mot. for lv. to app. den. 31 N Y 2d 643;
 
 Matter of Schnee [Levine],
 
 39 A D 2d 644, mot. for.lv. to app. den. 31 N Y 2d 642;
 
 Matter of Goloty [Catherwood],
 
 36 A D 2d 1022, mot. for lv. to app. den. 29 N Y 2d 489;
 
 Matter of Morales [Catherwood],
 
 36 A D 2d 579, mot. for lv. to app. den. 28 N Y 2d 485;
 
 Matter of Kreager [Catherwood],
 
 34 A D 2d 1033, app. dsmd. 27 N Y 2d 737).
 

 It is suggested by respondent that administrative extension Of the doctrine beyond the situation where the employee’s voluntary acts result in the employer’s “ involuntary ” discharge of the employee arose from two conditioning circumstances. The first was the pre-1958 difference in eligibility periods between voluntary separation and misconduct. The second was the reluctance to stigmatize a discharged employee with misconduct. In short, the doctrine for either or both of these reasons was extended to accomplish on the one hand a benevolent purpose, and on the other a euphemistic purpose, perhaps understandable, but logically mischievous. Indeed, claimants argue, with some cogency, that the inappropriate extension of the doctrine has in effect introduced, without statutory authority, an added, distinct ground for disqualification, and to make matters worse, susceptible of arbitrary application.
 

 The criticism by claimants is sound but the result of invoking it in the cases at hand does not entitle them to relief. In each instance, the claimant was guilty of misconduct in connection with her employment, and the findings of fact, apart from the characterization of the conclusion, resulted properly in temporary ineligibility. In two of the cases, the employee was advised directly that continued misconduct would result in sanctions being imposed, in one case by discharge, and in the other, by treating the misconduct as insubordination, a polite and euphemistic way of advising the employee that she was inviting discharge, In the third Case, it is immaterial whether the employee’s conduct was characterized, as misconduct or as a voluntary
 
 *496
 
 separation: after sustaining injuries, she did not return to her employment and, although being requested to advise her employer when she would return, she did not.
 

 Consequently, it is concluded that there should be an affirmance in each of the cases for the reasons above stated, but with the urgent suggestion that the division, if its determinations are to survive judicial review, recast its thinking, regulations, and applications of the standards under the statute. Otherwise, as claimants argue, it may happen, although it did not in the instant cases, that persons are denied eligibility because discharged but only for valid cause which, however, could neither be characterized as misconduct nor voluntary separation. There is no question that
 
 “
 
 valid cause ” for discharge must rise to the level of misconduct before an employee becomes ineligible to receive benefits. This, the division’s regulations unequivocally expressed, in classifying, among other things, inefficiency, negligence, and bad judgment, as valid causes for discharge and which do not render the employee ineligible.
 

 Among other jurisdictions, there has always been disagreement whether one who effects his own discharge by indirection may be deemed to abandon his employment “ voluntarily The doctrine is a fiction in most cases, the real cause of discharge being misconduct. Some jurisdictions, refuse to recognize the category of
 
 “
 
 constructive voluntary leaving ” (see 81 C.J.S., Social Security and Public Welfare, § 164, at p. 250; see, also, Ann., Unemployment Compensation — Union Acts, 90 ALR 2d 835, 837). It would seem that the doctrine arose largely within the context of union activities and collective bargaining agreements, where special policy considerations were at work. Certainly those special concerns account, in large measure, for the ■
 
 Malaspina (Corsi)
 
 309 N. Y. 413,
 
 supra)
 
 result (see Ann., Unemployment Compensation — Union Acts,
 
 op. cit., supra).
 
 For the large majority of cases, consideration of eligibility under the rubric of misconduct leads to more sensible analysis and resolution. More important, the statute requires it.
 

 In the light of the above analysis, it is timely to turn to the particular facts and findings in each of the three cases.
 

 Claimant James was employed as a counter girl in a coffee shop. After repeatedly reporting for work under the influence of alcohol she was told that unless that ceased she would be
 
 *497
 
 discharged. On her last day of employment, she reported for work under the influence of alcohol, and was discharged at the end of the working day. An initial determination was made that she had been discharged for misconduct or in the alternative that she had provoked her discharge. The referee and the appeal board without changing any finding of fact concluded that she had voluntarily left her employment by provoking her discharge. The result of ineligibility was compelled once the facts were found as they were. It would serve no useful purpose to remand the claim to the division to reassess the conclusion. The net effect would be only to substitute the correct category for the misapplied doctrine of provoked discharge.
 

 Claimant G-uerrasio was a restaurant cashiér and hat check girl. Sustaining injuries in a motorcycle accident, she was away from her employment with initial advice to her employer. The referee found that she was not ineligible because her physical condition had prevented resumption of employment. The appeal board found that claimant’s sister had advised the employer of the accident and her expected disability for one week. Claimant was not heard from until some three weeks after the accident, despite unanswered telephone calls to her. Just before the summer, her father telephoned the employer, advised that she was with relatives upstate, and that she would like to return to work after the summer. The restaurant would be closed during the summer. The appeal board held that claimant had provoked her discharge. In fact she had, according to the board’s finding, voluntarily terminated her employment for the time being, or, in the alternative, was guilty of misconduct in fixing her own periods of employment and in not giving notice of when she would be able to return to work. Again, it would serve no useful purpose to remand the claim to the division to reassess the conclusion, only to eliminate the inappropriate language of provoked discharge which should be limited to
 
 “
 
 involuntary ” discharge by the employer due to
 
 “
 
 voluntary ” act of the employee.
 

 Claimant Morrison’s case is the most troublesome of the three. She was employed as a social case worker in a mental health clinic, and became involved in a tendentious exchange. When a superior asked for her to explain the disposition in a particular case, she, according to the superior, did not give a satis
 
 *498
 
 factory explanation. She was called to the director’s office where the superior was also present. Sensing the confrontation she left the director’s office, although first warned by the director that her leaving would be considered an act of insubordination. She was later discharged. The referee and appeal board found the facts as above and held that she had provoked her discharge. Of course, misconduct could always “ provoke discharge ” but that is not what the doctrine covers. For that matter “valid cause”, to the extent dependent on voluntary .acts, could be said to ‘ ‘ provoke discharge ’ ’. This claim demonstrates best the misuse of the provoked discharge doctrine and the dangers of misuse. At the same time, the findings unequivocally point to misconduct and the division so found or else it could not have verbalized as applicable the provoked discharge doctrine. Hence, as with the other two cases, no useful purpose would be served in remanding the claim to the division to reassess the findings or the result.
 

 In summary, each of the cases demonstrate the inapprojariateness of the provoked discharge doctrine, where the employer may or may not choose to discharge the unsatisfactory employee. Matter of
 
 Malaspina (Corsi)
 
 (309 N. Y. 413,
 
 supra)
 
 should be confined to the instance of the “ involuntary ” discharge by an employer for cause flowing from the “ voluntary ” act or acts of the employee. Causes for discharge which do not attain the level of misconduct may not be used to render claimants ineligible for benefits. Voluntary separation should, except perhaps in the unusual situation of the
 
 Malaspina
 
 case, be confined to the giving up of employment permanently or temporarily, without cause or justification.
 
 *
 
 *
 

 Accordingly, the orders of the Appellate Division should be affirmed, without costs.
 

 Judges
 
 Jasen, Gabrielli, Jones, Wachtler, Rabin and Stevens concur.
 

 In
 
 Matter of James (Levine)
 
 and
 
 Matter of Guerrasio (La Grenouille
 
 —
 
 Levine):
 
 Orders affirmed.
 

 In
 
 Matter of Morrison
 
 (Levine): Order affirmed.
 

 *
 

 Attorneys for claimants are commended, despite the technical outcome of the appeals, for their efforts on these appeals and .for the benefit conferred in • helping clarify the standards for eligibility for unemployment insurance benefits.