■ In the Matter of the Claim of Louis FISCARELLI, Appellant. PHILIP Ross, as Industrial Commissioner, Respondent.—Appeal from a decision of the Unemployment Insurance Appeal Board, filed May 31, 1977, which affirmed the decision of a referee sustaining the initial determination of the Industrial Commissioner disqualifying claimant from receiving benefits effective October 19, 1976 because he lost his employment through misconduct in connection therewith. The referee found as follows: claimant was a child care worker in a temporary shelter for PINS and juvenile delinquents. While so employed he developed a close personal relationship with a 15-year-old boy (hereinafter D) who had been in the shelter where the claimant worked. As a result of a complaint made by the director of the home to which D had been subsequently sent, claimant was informed by his superior that he was not to interfere in the placement of the boy. On October 26, 1976, claimant sent a letter to the Family Court expressing the opinion that the boy should be returned to his parents. Claimant was fired when the probation officer supervising D and the Family Court Judge complained to claimant's superior. The referee concluded that claimant's conduct was not in the best interests of the employer and constituted misconduct. The board affirmed his findings. Claimant contends on this appeal: that the record does not support, by substantial evidence, a finding of misconduct in connection with his employment because claimant did not violate any reasonable rule or condition relating to his employment; that his actions were not detrimental to the best interests of his employer; and finally, that a denial of benefits to claimant violates his right of freedom of speech and association under sections 8 and 9 of article I of the New York Constitution. The testimony of claimant's superior, Mr. Capone, indicated that he had received a complaint in April, 1976, from a Mr. Adams who was D's probation officer, alleging that the claimant was influencing the boy in a negative manner in terms of placement. The charges were ultimately retracted by Mr. Adams and Mr. Capone told the claimant that, "if he wanted to maintain a relationship with the boy, this way okay, but if I received anymore complaints as to interference in the case or anything like that, or sabotaging of placement, there would be disciplinary action taken." On October 28, 1976, claimant wrote a letter on behalf of D to the Family Court. The Family Court Judge, the director of probation and the probation officer in the case, complained to Mr. Capone regarding claimant's action for, "sticking his nose into this particular matter." Claimant was fired for interfering with D's treatment. Mr. Capone said that there was no work rule prohibiting child care workers from association with prior residents. Claimant testified that as a result of the April complaint he was told by Mr. Capone to be cautious when going to an institution which might be associated with the shelter so that such charges as were made by Mr. Adams might not be made in the future. Claimant said he understood that it was a general rule that he should not involve himself in disagreeing with the placement of PINS. He said that D

asked him to write a letter to the Family Court on his behalf in contemplation of a hearing the child had requested to petition for a return to his own home. Claimant wrote a letter to Family Court in which he dwelt on his knowledge of D and expressed his personal opinion that D could adjust to home life. His letter stated that he was writing it personally and not in any official capacity. Claimant said that he had written the letter innocently and under the assumption that the court would welcome any informed input in making its decision. The claimant said he felt secure in writing the letter since a pamphlet circulated at the shelter to inmates and staff indicated that such positive letters should be sought by PINS and submitted to the court. This rather tortured sequel of events which resulted in claimant's dismissal does not constitute misconduct in connection with claimant's employment. No rule or regulation of employment was violated by claimant. Although claimant provoked the displeasure of authorities in Family Court and in the probation department which had D's case, it can hardly be said that his actions were detrimental to the interests of his employer. The outcome of D's case was in no way related to claimant's obligations and duties as an employee of the shelter. The shelter, likewise, had no further interest in the final disposition of D's case and his letter did not affect any legitimate concerns of the shelter. Whatever information claimant offered as a friend of D's should have been welcome. An experienced Judge should have little problem in placing claimant's letter in proper perspective and use it to serve the best interests of the child and the community. The irritation of the probation department and the probation officer involved is perhaps understandable in view of the fact that claimant's private letter was obviously not in keeping with the probation officer's recommendation. However, probation reports very often contain the observations and opinions of other custodial officials who know the individual involved and his character. The outcry here seems to be rooted not in the fact that claimant offered an observation but because it differed from that expressed by the supervising probation officer. The conduct of claimant does not rise to the definition of misconduct adopted by regulation by the New York State department of employment which requires that conduct about which the complaint is made be that which is in willful and wanton disregard of the employer's interest *(CCH, Unemployment Ins. Reporter, vol 1B, NY Laws, Rules & Regs.,* § 1970 *et seq.).* There is no question that "valid cause" for discharge must rise to the level of misconduct before an employee becomes ineligible to receive benefits. Inefficiency, negligence and bad judgment are valid causes for discharge but do not render a claimant ineligible for benefits *(Matter of James [Levine],* 34 NY2d 491). On this record there is no evidence that claimant's conduct was detrimental to the interests of the employer. The irritation provoked by claimant's letter did not affect the interests of the employer. Claimant's acts were, also, not a knowing violation after a warning. The instruction given him in April was an equivocal one to avoid trouble and claimant could not reasonably be expected to conclude that it covered a letter solicited from him by D sent pursuant to information disseminated at the shelter to inmates and staff. Finally, the letter did not express disagreement with any placement of D but merely supplied information on D's ability to function in a free environment. Decision reversed, with costs, and matter remitted to the Unemployment Insurance Appeal Board for further proceedings not inconsistent herewith. Greenblott, J. P., Main and Mikoll, JJ., concur; Kane and Larkin, JJ., dissent and vote to affirm.