**CITY OF DALLAS, a Municipal Corporation, Appellant,**

v.

**TEXAS EMPLOYMENT COMMISSION and Charles A. Gulden, Appellees.**

**No. 8940.**

Court of Appeals of Texas, Texarkana.

Nov. 10, 1981.

Lee Holt, City Atty., Gary E. Keane, Asst. City Atty., Dallas, for appellant.

Mark White, Atty. Gen. of Texas, Marilynn Bailey, Asst. Atty. Gen., Austin, Kenneth H. Molberg, Wilson, Williams & Molberg, Dallas, for appellees.

CORNELIUS, Chief Justice.

Charles Gulden was discharged from his position as a right-of-way agent for the Dallas Public Works Department because of his refusal to take a polygraph test in connection with an investigation of a bomb threat. The Texas Employment Commission ruled that Mr. Gulden's refusal to submit to the test did not constitute misconduct as that term is used in Tex.Rev.Civ. Stat.Ann. art. 5221b–3(b),[1] and awarded him unemployment compensation. The City appealed to the district court which found the Commission's decision to be supported by substantial evidence and affirmed it. We agree and affirm the district court's judgment.

The bomb threat was directed to the City Credit Union which was housed in the same building as the Public Works Department. Because previous pranks had occurred in the right-of-way division of the Public Works Department, its employees were considered prime suspects in the bomb threat. The director of Public Works circulated a memorandum directing each employee of the right-of-way division to sign an attached waiver and consent to the polygraph examination. Mr. Gulden at that time was considered an active suspect. He, along with several other employees, refused to submit to the polygraph examination, but in other respects he fully cooperated with the police investigation. He was not notified, at the time he was employed, that he might be required to take a polygraph examina-

---

1. "Art. 5221b–3. *Disqualification for benefits*
   An individual shall be disqualified for benefits:

   .  .  .  .  .

   (b) If the Commission finds he has been discharged for misconduct connected with his last work. Such disqualification shall be for not less than one (1) nor more than twenty-six (26) benefit periods following the filing of a valid claim, as determined by the Commission according to the seriousness of the misconduct."

tion in connection with his work. Both the Commission and the district court relied heavily upon that fact in finding that his refusal to take the test did not constitute misconduct as contemplated by the statute.

Mr. Gulden was officially discharged for violating Rule 7.4(d) of the City's Personnel Rules, which provides that:

"§ 7.4. The following are offenses which apply to all employees and which are grounds for discharge, . . . :

(d) *Insubordination.* Willful failure or refusal to perform assigned work; or to fully comply with instructions or orders as requested by the supervisor or other member of management."

The City contends that Mr. Gulden's refusal to obey the direct order of his superior concerning the polygraph examination was insubordination of such a nature as amounts to misconduct sufficient to disqualify him from unemployment benefits. The City recognizes the right of Mr. Gulden to refuse to take the test on Fifth Amendment self-incrimination grounds, but argues that since the United States Supreme Court has now ruled that a test given under the circumstances existing here cannot be used against the employee in a subsequent criminal prosecution,[2] his refusal to take the test was unreasonable and thus constituted misconduct.

■ As used in the unemployment statutes, misconduct has been defined as an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, or a disregard of standards of behavior which the employer has the right to expect of his employees. *Texas Employment Commission v. Ryan,* 481 S.W.2d 172 (Tex.Civ.App.—Texarkana 1972, no writ), and cases there cited. Implicit in the definition and confirmed by the cases is the fact that, when the charge of misconduct is based upon the violation of a work rule or a supervisor's directive, the rule or directive must be reasonable. See *Hickenbottom v. District of Columbia,* 273 A.2d 475 (D.C.App.1970); *Gregory v. Anderson,* 14 Wis.2d 130, 109 N.W.2d 675 (1961). An-

other way of expressing it is that the employee's refusal must not be unreasonable, judged by what a reasonable, prudent person would do under the same or similar circumstances. It is true that this criterion tends to place emphasis upon the subjective motives and attitudes of the employee rather than upon objective standards, but one cannot determine whether an employee's action is misconduct within the humanitarian purpose of the unemployment compensation statutes without judging the reasonableness of his act from his standpoint in the light of the circumstances facing him and the knowledge possessed by him at the time.

■ The City argues that the high degree of trustworthiness and dependability necessary for public employees demands that the public agency have the right to discharge employees who claim the privilege against self-incrimination. The correctness of that assertion has been established. *Lefkowitz v. Cunningham,* 431 U.S. 801, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977); *Gardner v. Broderick,* 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968). But the issue here is not wrongful discharge. The Commission concedes that the City had the right to discharge Mr. Gulden. The issue here is the employee's entitlement to benefits under the provisions of a beneficent statute. Conduct constituting good cause for termination of employment does not necessarily equate with conduct disqualifying one from the benefits of that statute. To constitute the latter, the acts or omissions must rise to the level of misconduct, which generally requires wrongful intent, bad faith or wanton disregard of the employer's interests. See, for example, *Boughton v. Division of Unemploy. Ins., Dept. of Lab.,* 300 A.2d 25 (Del.Super.1972); *James v. Levine,* 34 N.Y.2d 491, 358 N.Y.S.2d 411, 315 N.E.2d 471 (1974); *Hulse v. Levine,* 41 N.Y.2d 813, 393 N.Y.S.2d 386, 361 N.E.2d 1034 (1977); *Liebmann Packing Co. v. Industrial Commission,* 27 Wis.2d 335, 134 N.W.2d 458 (1965); 81 C.J.S. Social Security § 222 at 428; § 224 at 441.

**2.** *Garrity v. New Jersey,* 385 U.S. 493, 87 S.Ct.  616, 17 L.Ed.2d 562 (1967).

In view of the facts here, particularly that Mr. Gulden was not advised at the time of his employment that there was a possibility of his being subjected to a polygraph examination, and that at the time he was asked to submit to the test he was an active suspect and apparently believed he was properly exercising his constitutional privilege against self-incrimination, we find there was substantial evidence before the trial court that his refusal to take the test was not misconduct as contemplated by the statute.

The judgment is affirmed.

BLEIL, Justice, dissenting.

No evidence supports our holding that substantial evidence exists to support a finding that Charles Gulden's actions did not constitute misconduct. No precedent supports our holding that the supervisory directive was unreasonable. Therefore, I respectfully dissent.

Section 7.4(d) of the City's Personnel Rules provides that refusal to comply with instructions or orders from a supervisor is grounds for discharge. Gulden refused to assist in the investigation of the bomb threat by not taking a polygraph examination as directed.

The record reveals that the appeals referee found the following:

"The claimant in the instant case was discharged because he refused to submit to a polygraph examination when requested to do so by the employer. The examination was to be administered to all employees in the claimant's department in an investigation of a bomb threat made to the City of Dallas Credit Union. The employer's request was not unreasonable, and the claimant's refusal to cooperate in the investigation constituted insubordination. The claimant was discharged for misconduct connected with his work, and a disqualification under § 5(b) of the Act is in order...."

On the same record before the referee, a majority of the Texas Employment Commission determined that a claimant would not be considered guilty of misconduct connected with the work for refusing to take a polygraph examination, because he had not agreed to take the examination when he was hired. The opinion of the dissenting member of the Texas Employment Commission was that a claimant such as Gulden, who refuses a reasonable request to take a polygraph examination should be considered guilty of misconduct connected with the work and should be disqualified under the terms of § 5(b) of the Act.

The Commission, the trial court, and the majority of this Court, attach undue significance to the fact that Gulden was not advised, at the time of his employment, that there was a possibility of his being subjected to a polygraph examination. There are innumerable unimaginable acts of misconduct which might disqualify one from unemployment compensation benefits. It would be impossible for an employer to envision every possible circumstance constituting misconduct in order to relate them to an employee before employment. The majority would have all employers be prophets. The foundation of the majority's opinion is the fact that Gulden was not told before he was hired that there was a possibility of being subjected to a polygraph test. This foundation is built on shifting sand.

The test adopted, for whether or not a rule or directive is a reasonable one, is also suspect. The majority seems to hold that courts should follow a completely subjective standard, applied from the point of view of the employee. I disagree. Rule 7.4(d) is not attacked as unreasonable. Whether the supervisor's directive that he take a polygraph test was reasonable in light of the prior pranks within Gulden's department, the serious bomb threat and the City's need to eliminate that sort of incident, is the issue. The issue is not whether the employee's insubordination was unreasonable, viewed through his eyes and in light of the circumstances facing him.

Under the circumstances of the employer his directive to the prank-prone members of the right-of-way section was reasonable. The circumstances were that a bomb threat

was being investigated by the City. Gulden's employer needed him to assist in the investigation. He knew his employer needed his help in this serious matter. His refusal to follow the directive given him was insubordination under the personnel rules and misconduct under the unemployment statute.

This Court in *Texas Employment Commission v. Ryan*, 481 S.W.2d 172, 177 (Tex. Civ.App.—Texarkana 1972, no writ), indicated that the statute comprehends more than misconduct in the performance of the work; it requires abstinence from conduct that would justify an employer in discharging an employee. Gulden certainly did not abstain from conduct that would justify his employer in discharging him, but rather he engaged in precisely the type of misconduct contemplated by the statute. It was further an act of willful disregard of the employer's interest, a deliberate violation of the employer's rules, and a disregard of standards of behavior which the employer has the right to expect. This conduct is proscribed by similar legislation in other states. *Hickenbottom v. District of Columbia*, 273 A.2d 475, 477 (D.C.App.1970).

I would reverse the judgment of the trial court.