Snyder Industries, Inc., appellant, v. Wesley V. Otto and John R. Hanlon, Commissioner of Labor of the State of Nebraska, appellees.

321 N.W.2d 77

Filed June 25, 1982. No. 81-667.

Johnston, Barber & Wherry, for appellant.

No appearance for appellee Otto.

Pamela A. Mattson, for appellee Hanlon.

Heard before Krivosha, C.J., Boslaugh, McCown, Clinton, White, Hastings, and Caporale, JJ.

Hastings, J.

The appellee Wesley V. Otto was employed by the appellant, Snyder Industries, Inc., from October 29, 1973, to August 5, 1980. Otto was terminated from his employment on this latter date for failing to comply with a policy established by management, which prohibited current employees from associating with former employees. Otto filed a claim for unemployment compensation benefits under the Nebraska Employment Security Law, Neb. Rev. Stat. §§ 48-601 et seq. (Reissue 1978). A claims deputy allowed the

claim. On appeal by Snyder to the Nebraska Appeal Tribunal, the decision of the claims deputy was affirmed. In turn, the District Court affirmed the action of the Nebraska Appeal Tribunal. Snyder has appealed to this court, alleging generally that Otto was not entitled to unemployment benefits because his discharge arose out of a knowing, deliberate, and willful violation of the company's rules. We affirm.

According to the testimony of Harvey Schwartz, the personnel manager at Snyder, Otto had been employed as credit and transportation manager. Larry Snyder, the president of the appellant company, testified that Snyder Industries had established a policy prohibiting current employees from associating with ex-employees, especially those persons employed by competitors. This policy had been verbally communicated to the different employees during staff meetings. Snyder testified further that numerous leaks of information from the business to competitors had developed in 1979, and that one of the persons to whom management believed the information had been leaked was a former employee with whom Otto had been associating. However, he did not say that Mr. Otto was one of the suspected leaks.

On August 5, 1980, Mr. Snyder confronted Otto in the latter's office, reminded him of the policy, and informed Otto that he understood that Otto had gone on a vacation with an ex-employee of Snyder's who was now in competition with the company and with whom the company currently was engaged in litigation. Otto admitted that he had in fact taken such a vacation, and in answering a query from Snyder to the effect that did he not think he should be a little more discriminating in the people with whom he associated, Otto in effect told Snyder that he could not tell him who his friends were to be. The upshot of the conversation was that Otto was fired right then and there, and he picked up his personal things and left.

In explaining why the policy was never reduced to writing, Mr. Snyder said that it was a bad situation because the employees became very defensive when told that they could not bowl with an ex-employee or should not associate with an ex-employee who is a competitor. However, he repeated under examination by the hearing examiner that he had absolutely no knowledge of Mr. Otto ever having leaked information to competitors.

Mr. Otto also testified at the hearing before the Nebraska Appeal Tribunal. He admitted that he had knowledge of the company policy. He denied categorically that he had ever dispersed any company information to the ex-employee in question. Otto stated he had known this particular man for 13 years, and, as a matter of fact, it was he who had been instrumental in getting Otto to come to work for Snyder. The particular vacation that the two of them took together had originally been planned from 5 years earlier, but because of an injury to one of Otto's children, it was not taken until 1980. Otto testified that one of the things he and the ex-employee had agreed upon following the latter's departure from Snyder's employment was that there would be no shoptalk between the two. Besides professing absolute loyalty to Snyder, Otto also testified that he did not possess a great amount of knowledge concerning the manufacturing process due to his position as manager of credit and transportation.

There is no question raised on this appeal as to the authority of Snyder to discharge an employee. The only thing which we must decide is whether this can be done without the employee becoming eligible for unemployment compensation benefits. Section 48-628 provides in part that an employee shall be totally disqualified for benefits if the employee discharged was guilty of misconduct connected with his work which was "gross, flagrant, and willful."

The appellee Commissioner of Labor argues that

in order for an employee to become ineligible for benefits because of a violation of a work rule, the rule must be reasonable. Although admitting that this precise issue is one of first impression in this jurisdiction, the commissioner bases his argument on the case of *Bristol v. Hanlon,* 210 Neb. 37, 312 N.W.2d 694 (1981). Therein, we defined the term "misconduct" as requiring a "deliberate, willful, or wanton disregard of an *employer's interest* or of the standards of *behavior which the employer has a right to expect of his employees* . . . ." (Emphasis supplied.) *Id.* at 41, 312 N.W.2d at 696.

The Wisconsin court has dealt directly with the rule advocated by the commissioner. In *Gregory v. Anderson,* 14 Wis. 2d 130, 109 N.W.2d 675 (1961), the plaintiff was engaged in the business of servicing vending machines in taverns. His automobile liability insurance had been canceled because of the nature of his business. However, upon instigating and enforcing a rule which prohibited the employees from drinking alcoholic beverages on or off the job, and which was agreed to in writing by Anderson, Gregory was enabled to obtain the necessary insurance. Anderson was arrested for drunken driving some 6 months later. However, with the approval of the insurance company, Anderson was given another chance. Anderson was fired 1 year later after his involvement in an accident in which he admitted that he had been drinking.

In denying Anderson benefits because of misconduct, the court pointed out that the rule itself was probably the decisive factor in inducing the insurance company to provide coverage, and that Anderson was aware of the purpose of the rule. The court said: "In order for violation of a rule laid down by the employer to constitute misconduct under such statute, such rule must be a reasonable one. When such rule relates to conduct of the employee during off-duty hours, it must bear a reasonable relation-

ship to the employer's interests in order to be reasonable." *Id.* at 137, 109 N.W.2d at 679.

On an appeal under the Employment Security Law, we must consider the cause de novo on the record, which means that it is our duty to retry the issues of fact involved in the findings complained of and reach an independent conclusion thereof. *Glionna v. Chizek,* 204 Neb. 37, 281 N.W.2d 220 (1979).

If, in fact, Snyder's production secrets were being obtained by competitors, it would be more logical to believe that such was being accomplished by the hiring away of Snyder's employees rather than through the association of current employees with former employees. The rule with which we are here concerned would not prevent such practices. Furthermore, the basis for the rule involved loses all sense of reason when one substitutes husband and wife, or father and son, for the two friends involved in the relationship forbidden here.

We do not believe that a rule which forbids *all* contact between friends and acquaintances in the interest of preventing "leaks" of production secrets simply on the basis that one or the other is no longer an employee of the company bears a reasonable relationship to the employer's interest. Therefore, one who is discharged for violating such an unreasonable rule is not guilty of "misconduct" as that term is used in the Nebraska Employment Security Law. Accordingly, the judgment of the District Court is affirmed.

AFFIRMED.