# David CODY *v.* William F. EVERETT, Director of Labor, and CITY OF WEST MEMPHIS

E 82-292                                            648 S.W.2d 508

### Court of Appeals of Arkansas
### Opinion delivered March 23, 1983

*Saxton & Ayres,* by: *William C. Ayres,* for appellant.

*Alinda Andrews,* for appellees.

LAWSON CLONINGER, Judge. Appellant was denied unemployment benefits by the Arkansas Board of Review on the grounds that he was discharged from his last work for "... misconduct even though he was not on the job." The Board found that appellant violated the standards of behavior expected of him by endangering the safety of others.

We do not find substantial evidence to support the decision of the Board and we reverse and remand.

Appellant was disqualified for benefits on the basis of Ark. Stat. Ann. § 81-1106 (b) (2), which provides for a claimant's disqualification as follows:

(2) *If he is discharged from his last work for misconduct in connection with the work on account of* dishonesty, drinking on the job, reporting for work while under the influence of intoxicants, or *willful violation of the rules or customs of the employer pertaining to the safety of fellow employees or company property* . . . (Emphasis added.)

Appellant, a police officer for the City of West Memphis, Arkansas, was discharged from his job on April 12, 1982 for conduct unbecoming an officer. The incident precipitating his discharge occurred at appellant's home about 3:00 p.m. on March 29, 1982, when appellant called the police department and requested that the people on his block be evacuated because he was going to start shooting. When two police officers arrived at appellant's house, appellant fired one shot and the officers "saw the whole front door explode from the impact." Appellant, still with a pistol in his hand, was wrestled to the ground by several police officers some thirty minutes or more after the firing of the shot. No verbal threats were made to the police officers. After his arrest, appellant refused to make any comment or give any information. Upon entering appellant's house, the officers found an automatic pistol and a shotgun, and discovered that appellant had shot holes in the living room wall, the front door and a front window.

Upon evaluation of the appellant at the local mental health center, the staff clinical social worker and the staff psychiatrist reported that, in their professional opinions, appellant appeared to be suffering from severe depression and was definitely in need of hospitalization to avoid harm to himself or others. Appellant was hospitalized at the Arkansas State Hospital for seven days on a probate court order.

On April 8, 1982 the Chief of Police for the City of West Memphis, in a letter to the Mayor, recommended that appellant be terminated, relating that "he was not told to report to work as I do not see how the department can bear the liability of putting him back on the street with a weapon." The Chief of Police stated that he did not make the recommendation sooner because, among other reasons, "In the state I last saw David Cody I did not see how any discipline action could be taken at that time."

It is often difficult for an employer to distinguish between a valid reason for the discharge of an employee and that employee's entitlement to unemployment benefits. A city is at liberty to establish reasonable rules of conduct for its police officers, and the action of the City of West Memphis in terminating appellant's employment was perhaps prudent under the circumstances. However, appellant's right to unemployment benefits is governed by statute. The statute applied by the Board, § 81-1106 (b) (2), clearly mandates that a claimant is to be disqualified only if he is discharged from his last work for misconduct in connection with the work on account of a *willful* violation of the rules or customs of the employer pertaining to the safety of fellow employees.

First, there is no evidence that the conduct of the appellant had any connection with his work. At the hearing, a representative of the City testified that appellant was not on duty at the time of the incident, and the Board of Review specifically found that he was not on the job. There could perhaps be circumstances under which an off-duty policeman could be said to perform acts in connection with his work; he could hold himself out to be acting as a policeman by words or deeds or by being in uniform in public places. In this case, however, the appellant was in his own home, and although he was behaving in a violent manner his actions had no connection with his work.

Second, the Board of Review did not find that appellant willfully did any act, but only that he violated the standards of behavior expected of him by endangering others. By general definition, willful means self-determined; inten-

tional. See Webster's Third New International Dictionary, Merriam-Webster 1976; Black's Law Dictionary 1434 (5th ed. 1979). There is no evidence to indicate that appellant was in willful violation of any rule or custom of his employer, and there is an abundance of evidence that he was incapable of doing any act willfully or intentionally: appellant's conduct was extremely irrational; a clinical social worker and a psychiatrist reported that appellant suffered from severe depression and definitely needed hospitalization; and the Chief of Police would not attempt to take any disciplinary action because of appellant's state.

We hold that there is no substantial evidence to support the decision of the Board of Review. The case is reversed and remanded to the Board of Review with directions to determine whether appellant is otherwise entitled to unemployment benefits.

Reversed and remanded.

MAYFIELD, C.J., and COOPER and CORBIN, JJ., concur.

DONALD L. CORBIN, Judge. I concur in the result arrived at in this decision, however, I must voice my disagreement with the majority's inference concerning its first point. The majority opinion states that there is no evidence to support the contention that the "misconduct had any connection with the work." That statement is premised on the fact that appellant was "not on duty", and "not on the job" at the time of the incident, and it occurred "in his own home." This fact, alone, is not dispositive of the question of whether the misconduct was in connection with the work. It is not enough to say that because an act of misconduct relates to the "private life" of the employee that it is not connected with his employment. In certain instances, as illustrated in cases from other jurisdictions, the off-duty actions of an employee may be the basis for a disqualification from unemployment compensation for misconduct.

In *Gregory* v. *Anderson*, 14 Wis.2d 130, 109 N.W.2d 675, 89 ALR2d 1081, the claimant was discharged for drinking intoxicating liquors during his off-duty hours. Claimant in

that case had made an agreement with the employer to abstain from such conduct because of an agreement the employer had with his automobile insurance carrier. The Wisconsin Supreme Court held that a deliberate violation of the agreement or rule constituted an wilful disregard of the employer's business interests. The Wisconsin court in its opinion stated the following:

> Because of the nature of certain employments, conduct of employees during off-duty hours may harm or tend to harm the interests of the employer. A few examples will suffice to demonstrate that this is so. A merchant might be harmed if a clerk employed by him should make statements to customers, and prospective customers, disparaging the quality of merchandise sold by the merchant, although such statements were made at social functions when the employee was off duty. A Y.M.C.A. secretary, who, while outside of his hours of employment, patronizes taverns selling intoxicating liquor, would tend to injure the interests of the organization employing him, which organization seeks to build good character among the youth of the community. Bank tellers, who outside of their working hours, gamble on horse races or speculate (not invest) in the stock market, probably are more likely to be tempted to embezzle funds of the bank than those tellers who do not. A rule of the particular employer, which forbids any of these off-duty employee activities covered in these three illustrations, would be a reasonble one, and discharge for violation thereof would be for misconduct connected with the employment within the meaning of sec. 108.04 (5), Stats.

In the case of *Johnson* v. *Board of Commissioners of Port of New Orleans*, 348 So.2d 1289 (La. 1977), the Louisiana Supreme Court dealt with misconduct by an off-duty policeman. The Court stated the following:

> We determine the controlling factor to be that in this instance a policeman violated the regulations concerning his conduct to the detriment of his employer and its duty to the citizens of the state. Because of the nature of

his employment, that is a policeman with the sworn duty to uphold the laws of this state, and see to the safety of its citizens and the security of their property, it is particularly important that Johnson's conduct both on duty and off, be such as to instill confidence in his concern for safety and accordingly we conclude the facts provide a reasonable basis for the Board of Review to find misconduct connected with his employment.

It is noted that the majority contemplates the circumstance where an off-duty policeman could be said to perform acts in connection with his work if he holds himself out to the public as a policeman at the time the act is committed. Certain areas of employment require higher standards of its employees than do others; and I believe that a police officer is held to an even higher standard of conduct than that contemplated by the majority. *Johnson* v. *Board of Commissioners of Port of New Orleans, supra.*

However, I agree with the decision in this case because I recognize, as the majority does, that in this case there is no evidence to indicate a *wilfull* or *intentional* violation of the rules or customs of the employer because of the mental condition of claimant.

MAYFIELD, C.J., and COOPER, J., join in this concurrence.