**Robert M. ARRENDALE,
Claimant-Appellant,**

v.

**REVIEW BOARD OF the INDIANA EM-
PLOYMENT SECURITY DIVISION,
William H. Skinner, David L. Adams,
and Paul M. Hutson, as Members of and
as constituting the Review Board of the
Indiana Employment Security Division,
Appellee,**

**and**

**City of Marion, Employer-Appellee.**

No. 2–982A310.

Court of Appeals of Indiana,
Third District.

Feb. 16, 1983.

Richard J. Swanson, Segal & Macey, Indi-
anapolis, for claimant-appellant.

Linley E. Pearson, Atty. Gen., Gordon R.
Medlicott, Deputy Atty. Gen., Indianapolis,
for appellee.

HOFFMAN, Presiding Judge.

Robert M. Arrendale brings this appeal
from the decision of the Review Board of
the Employment Security Division which
denied him eligibility for unemployment
compensation benefits. He presents two
issues for our review:

(1) whether, when the terms and condi-
tions of an oral employment agree-

ment under which an employee agrees to perform temporary part-time work are unilaterally changed by his employer by increasing the employee's working hours and refusing to replace him, an employee can cease employment for good cause within the meaning of Ind.Code § 22–4–15–1 (Burns 1982 Supp.); and

(2) whether an employee who quits a part-time employer, which is one of two simultaneous employers, in order to remain with his permanent full-time employer does so with good cause in connection with the work within the meaning of Ind.Code § 22–4–15–1.

In light of our decision, only the latter issue need be discussed.

For more than ten years before the spring of 1981, Arrendale worked as a full-time production employee at the Fisher Body plant. From May 1, 1981 to May 26, 1981 Arrendale worked for the City of Marion as a groundskeeper for the city softball diamonds. Arrendale accepted the job on a temporary basis as a favor to Willard Chambers, Parks and Recreation Director for the City of Marion. Chambers asked Arrendale to do the groundskeeping work in his spare time until Chambers could find a full-time permanent groundskeeper. Arrendale undertook the $60 per week job as a temporary source of extra income, but never intended for the job to replace his regular factory employment. Chambers knew that Arrendale's employment with the City was to be temporary and part-time, and Chambers agreed to locate a replacement for Arrendale. An oral agreement containing those conditions was made between the two men.

Shortly after Arrendale began working for the City, Fisher Body increased the number of overtime hours for its regular employees. Arrendale was required by the governing collective bargaining agreement at Fisher Body to work all the overtime assigned to him. Arrendale's job at Fisher Body increased to a six or seven day work week, which meant he was working a forty-hour week plus weekend overtime at Fisher Body and still maintaining his part-time job with the City. Arrendale made several inquiries as to how soon he would be replaced. The City was pleased with his work and admitted using Arrendale to "buy some time," hoping he would continue. Arrendale stayed with the part-time City job until May 26, 1981 at which time he was replaced by a full-time employee and his services were no longer needed.

Five weeks later, Arrendale was indefinitely laid off from his full-time employment at the Fisher Body plant. Arrendale applied for unemployment compensation benefits. However, his claim was denied, and he was found ineligible for benefits because of his earlier decision not to continue his part-time work with the City.

The decision was based upon Ind.Code § 22–4–15–1(d) which provides in pertinent part:

"The disqualifications provided in this section shall be subject to the following modifications:

(1) An individual shall not be subject to disqualification because of separation from his prior employment if he left to accept with another employer previously secured permanent full-time work which offered reasonable expectation of betterment of wages or working conditions and thereafter was employed on said job for not less than ten [10] weeks *or if, having been simultaneously employed by two [2] employers, he leaves one [1] such employer voluntarily without good cause in connection with the work but remains in employment with the second employer for at least ten [10] weeks subsequent to leaving the first employer,* or if he left to accept recall made by a base-period employer." (Emphasis added.)

Arrendale contends that the application of the statute has been misapplied in his case because he did leave his part-time job with the City with good cause.

■ In order for an unemployment compensation claimant to be entitled to benefits, a claimant who has terminated his

employment must show that his reasons for abandoning the employment were such as would motivate a reasonable, prudent person to terminate the job under the same or similar circumstances and that such reasons are objectively related to the job. *York v. Review Bd. of Ind. Employment Sec.* (1981), Ind.App., 425 N.E.2d 707; *Foster v. Review Bd. of Indiana Emp. Sec. Div.* (1981), Ind. App., 421 N.E.2d 744.

On review of a negative decision, the claimant has the burden of showing that upon the evidence submitted, the Board erroneously denied him relief to which he was entitled. *Lewis v. Rev. Bd.* (1972), 152 Ind. App. 187, 282 N.E.2d 876. On appeal, the Court will only disturb a decision of the Review Board if reasonable persons would be bound to reach a different conclusion on the evidence in the record. *York, supra.*

In applying our standard of review, a consideration of the circumstances surrounding the leaving of the claimant's employment is necessary, along with an examination of the situation of the claimant. "The pressure of necessity, of legal duty, or family obligation, or other overpowering circumstances, and his capitulation to them, may transform what is ostensibly voluntary unemployment into involuntary unemployment." *Hollingsworth Tool Wks. v. Rev. Bd. Emp. Sec. Div.* (1949), 119 Ind.App. 191, at 195, 84 N.E.2d 895, at 897.

Arrendale contracted for a temporary, part-time job as a favor to Chambers, with the condition that a replacement would be found for him as soon as possible. Thereafter, the hours of his full-time employment increased and the part-time job threatened to interfere with his regular employment. Yet, Arrendale continued to satisfactorily fulfill his job for the City with the anticipation of being replaced. The City delayed finding a replacement, but once a full-time employee was found to replace Arrendale, he left his part-time job. His contract had been completed. It can hardly be argued that any reasonable, prudent person would have done otherwise.

One of the principal purposes of the Employment Security Act is to relieve the economic insecurity of those who are involuntarily out of employment. *Hollingsworth, supra.* To penalize an industrious man who was involuntarily unemployed through no fault of his own seems incongruous. From the evidence presented, reasonable persons would be bound to reach the result opposite of the one reached in this instance. Therefore, the decision of the Review Board is reversed and remanded for proceedings consistent with this opinion.

Reversed and remanded.

GARRARD and STATON, JJ., concur.