**Bonnie M. SHORTRIDGE,
Claimant-Appellant,**

v.

**REVIEW BOARD OF the INDIANA EMPLOYMENT SECURITY DIVISION, John C. Mowrer, David L. Adams, and Joe A. Harris, as members of and as constituting the Review Board of the Indiana Employment Security Division, and Detroit Diesel Allison Division of General Motors Corporation, Appellees.**

No. 2–1085A330.

Court of Appeals of Indiana,
Fourth District.

Oct. 8, 1986.

Nora L. Macey, Segal & Macey, Indianapolis, for claimant-appellant.

Linley E. Pearson, Atty. Gen., Cheryl L. Greiner, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellees.

MILLER, Judge.

Shortridge appeals from a decision of the Review Board of the Indiana Employment Security Division denying in part her request to reopen her claim for unemploy-

ment compensation benefits during a period of pregnancy in 1977. The Review Board decision involved interpretation and application of the Order of the United States District Court in *UAW v. Indiana Employment Security Board* (S.D.Ind.) No. IP 76–705–C which declared unconstitutional former provisions of the Indiana Employment Security Act which disqualified pregnant women from receiving unemployment compensation benefits and ordered the Indiana Employment Security Board to accept or reopen claims on behalf of a specific class of women. Shortridge sought to reopen a claim she had filed in 1977 under authority of this Order. The Review Board denied in major part her reopened claim based on its finding that Shortridge impliedly accepted a leave of absence from her employer. Shortridge argues that the Review Board's original 1977 findings of fact that she did not apply for or accept a leave are binding upon the Review Board in later proceedings. We agree. We reverse the Review Board's decision and remand with instruction to apply res judicata to the facts as found in the 1977 proceedings and to reconsider whether Shortridge was otherwise eligible for unemployment compensation in 1977 and is a member of subclass (B)(1) and therefore entitled to unemployment compensation.

### FACTS

Bonnie M. Shortridge began working for Detroit Diesel Allison Division of General Motors (Allison) on October 8, 1973. On January 10, 1977, Shortridge informed her foreman she was approximately two and a half months pregnant and had been restricted by her doctor to lifting no more than ten pounds. While she was unable to perform her job as grinder operator because it required regular heavy lifting of objects weighing up to 120 pounds, Shortridge was able to perform other jobs within the plant. On January 14, 1977 her foreman advised her that there was no work available within her department that she could perform with the ten pound lifting restriction and issued a layoff slip, telling Shortridge to report to personnel for reassignment.

On January 18, 1977, the personnel manager told Shortridge no work was available and placed her on involuntary layoff, pending an opening which she could perform with the lifting restriction. The personnel manager suggested Shortridge take an unpaid maternity leave. Under the company insurance policy in effect at that time, a woman could draw only six weeks of disability insurance benefits during pregnancy. Shortridge refused to use the six weeks of benefits so early in her pregnancy and informed Allison that she was not disabled, wanted to continue working, and desired to be called for any job available within the lifting restriction. She was placed on regular layoff for lack of work.[1]

On February 28, 1977, Allison's records indicate the company unilaterally placed Shortridge on medical leave of absence without notifying her. Shortridge, unaware the company had already placed her on leave in February, later elected to utilize her six weeks disability insurance benefits and applied for maternity leave on July 8, 1977, stating she was disabled from work as of June 27, 1977. Her application was accepted by Allison and she was paid six weeks of benefits from the week ending July 2, 1977 through August 12, 1977. Her baby was born on August 5, 1977. Shortridge's last day of work was January 14, 1977. She was not called back to Allison until September, 1977, six weeks after her baby's birth, when she declined to return and voluntarily quit.

On January 20, 1977, two days after her layoff, Shortridge applied for unemployment compensation benefits. The deputy found Shortridge was eligible and satisfied the statutory requirements that she be able to work, available for work, and actively seeking work. Shortridge drew $81.00 per week in benefits for the weeks ending Jan-

---

1. Shortridge protested this change in status by filing a grievance claiming she had been laid off out of line with her seniority, but this grievance did not result in her return to work.

uary 29, 1977 through June 4, 1977. During this time, she reported weekly and remained able and available for work and actively seeking work.

Allison appealed the deputy's determination of eligibility first to an appeals referee, who ruled Shortridge was eligible, and then to the Review Board, which ruled Shortridge was disqualified for benefits under Section 15–1(4) of the Indiana Employment Security Act because she had separated from her employment due to pregnancy and *failed to apply for a leave of absence.* The Decision of the Review Board issued on June 10, 1977 provided:

"STATUTORY PROVISION INVOLVED: Indiana Employment Security Act (hereinafter referred to as the Act), IC 1971, 22–4–15–1(4), 14–3.

CASE HISTORY—SOURCE OF APPEAL: The employer appealed to the Review Board from the referee decision mailed April 7, 1977, which affirmed the deputy's initial determination of February 4, 1977, holding that claimant was separated from her employment due to pregnancy and was able and available for work. At the Review Board hearing on May 26, 1977, the employer was represented by Raymond Buchanan, Attorney, and the claimant appeared in person with James Taylor, Attorney.

STATEMENT OF FACTS: The record indicates that claimant worked for this employer until January 14, 1977, when she was technically laid off from her employment; that she was approximately 2½ months' pregnant at the time and had submitted a doctor's statement to the employer limiting her to lifting ten pounds while at work. The employer informed claimant that they had no light work available for her at that time but she could apply for a maternity leave if she so desired. Claimant testified that since she felt she could continue to work even though the work would be limited to ten pounds of lifting, *she chose not to seek a leave of absence and instead accepted a layoff in lieu of applying for a maternity leave.* The Board notes that the main section involved in this case,

even though there was a question of claimant's availability for work with the week ending January 27, 1977, falls under *Chapter 15–1(4)* of the Act, which reads as follows:

'An individual who is separated from employment because of pregnancy shall be subject to disqualification under this section only if she fails to apply for or to accept a leave of absence under a plan provided by the separating employer.'

FINDINGS AND CONCLUSIONS: The Review Board finds that the claimant last worked for this employer on January 14, 1977, at which time, because of pregnancy, she was ordered by her doctor to avoid lifting over ten pounds of weight while at work. It further finds that the claimant was informed by the employer that *she could apply for a pregnancy leave of absence but she chose not to do so.*

The Review Board concludes that Chapter 15–1(4) of the Act is clear on its face and that the claimant, who was separated from her employment because of pregnancy, *did not apply for a leave of absence* and *therefore is disqualified under the Section* of the Act.

DECISION: The decision of the referee in Case No. 77–A–1511 is hereby reversed this 9 day of June 1977. It is held that claimant is disqualified for benefits under Chapter 15–1(4) of the Act and that the statutory penalties provided under the above-cited statute are imposed.

(Emphasis added).

The Review Board's sole reason for denying eligibility to Shortridge was its finding that she had not applied for a leave of absence and its application of the statutory provision automatically disqualifying any pregnant woman who did not apply for or accept leave from her employer from receiving unemployment benefits. Although Allison was present at the Review Board hearing and introduced Shortridge's personnel records, the Review Board was not told of the unilateral leave imposed by Alli-

son on February 28, 1977. Shortridge remained unaware that Allison considered her status to be on medical leave of absence. As a result of the decision, Shortridge's benefits were immediately suspended as of June 4, 1977 and a notice of overpayment was issued for all benefits paid from January 29 through June 4, 1977, totaling $1,539.00. The effect of the Review Board decision was to deny Shortridge benefits for the entire period.

In 1979, the United States Court of Appeals for the Seventh Circuit, in *UAW v. Indiana Employment Security Board* (7th Cir.1979), 600 F.2d 118, held former Indiana Employment Security Act provisions [2] denying benefits to all women who are unemployed because of pregnancy without regard to whether individual pregnant women have the physical capacity to work was invalid, and the provisions denying unemployment compensation to women who were willing and able to work but were denied the opportunity to do so because of pregnancy, violated the Fourteenth Amendment of the United States Constitution.

As a result of this litigation, on September 21, 1983 the United States District Court for the Southern District of Indiana ordered the Indiana Employment Security Board to open, reopen, hear, rehear, consid-

er, and reconsider the claims of all women employees in one of four classes who were disqualified from receiving Indiana unemployment compensation benefits between December 8, 1971 and July 1, 1977 by application of the statutory presumptions relating to pregnancy. Shortridge claims to be a member of class B(1), defined in the District Court Order as:

"All women who left work between April 21, 1975 and July 1, 1977, because they were pregnant, *who did not apply for or accept a leave of absence* under a plan provided by the separating employer, who applied for and were denied Indiana unemployment compensation because they were pregnant, and who were otherwise eligible for Indiana unemployment compensation." (Emphasis added).

Shortridge filed a claim for reconsideration of the Review Board's 1977 decision. The deputy denied her new claim on the grounds that she was not entitled to file for benefits under the judgment as a member of subclass B because she *"applied for and/or accepted a leave of absence* from [her] separating employer." Shortridge appealed this determination and represented herself at a hearing before an appeals referee. The appeals referee affirmed in part and reversed in part the deputy's decision:

2. Ind.Code § 22–4–14–3(d) (Burns) read in relevant part:

"An unemployed individual shall be eligible to receive benefits with respect to any week only if he is physically and mentally able to work, is available for work and is found by the division to be making an effort to secure work.... For the purpose of this article [22–4–1–1–22–4–38–3], unavailability for work of an individual shall be deemed to exist but shall not be limited to, any case in which, with respect to any week, it is found:

\* \* \* \* \* \*

(d) That such individual's unemployment is due to pregnancy."

I.C. § 22–4–14–3(d) was repealed in relevant part, Pub.L. No. 253, § 1 (1975).

Ind.Code Ann. § 22–4–15–1 (Burns) read in relevant part:

"With respect to benefit periods established subsequent to July 1, 1976 and prior to July 4, 1971, other provisions of this article [22–4–1–1–22–4–38–3] notwithstanding, an individual shall be ineligible for any waiting period or

benefit rights based upon wages earned from any employer whose employ he has left voluntarily without good cause attributable to the employer or from which he has been discharged for misconduct in connection with his work: ... Provided, further, however, That the provisions of this paragraph shall be subject to the following modifications:

... (2) Separation from employment because of pregnancy shall be construed as within the purview of the disqualification provided herein ...

The disqualifications provided in this section shall be subject to the following modifications: ...

(4) An individual who is separated from employment because of pregnancy shall be subject to disqualification under this section only if she fails to apply for or to accept a leave of absence under a plan provided by the separating employer."

I.C. § 22–4–15–1 was repealed in relevant part, Pub.L. No. 262, § 25 (1977).

"FINDINGS OF FACT: The evidence indicates that the following findings are true. The claimant started employment with this employer on or about October 8, 1973. The claimant was a machinist. The last date of the claimant's employment was on or about January 14, 1977. The claimant quit her employment on or about September 27, 1977. The claimant *began a sick leave on January 14, 1977,* because she was pregnant and unable to perform the lifting required of her, since this employer did not have any work available that did not require such lifting. The *claimant never applied for a maternity leave,* although the claimant did realize that this employer did have a maternity leave policy, so to avoid discharge, *this employer placed the claimant on a maternity leave status,* which automatic leave was within the terms of this employer's leave of absence policies and agreement with the claimant's union. Such implied acceptance of a maternity leave was properly established by this employer on February 28, 1977. On June 27, 1977, the claimant filed for a maternity leave of absence and gave birth on August 5, 177 [sic], and such maternity leave status continued until the claimant quit on September 27, 1977. During the week ending January 15, 1977, up to and including the week ending February 26, 1977, the claimant did not apply for or accept a leave of absence under any plan provided by this employer, her separating employer.

CONCLUSIONS OF LAW: U.S. District Court Order No. IP 76–705–C requires the Indiana Employment Security Division to consider or reconsider the claims for unemployment benefits of women who did not receive benefits who were separated from their employment due to pregnancy between December 8, 1971, and July 1, 1977, *except that women who left work between April 21, 1975, and July 1, 1977, who applied for and/or accepted a leave of absence from the separating employer.* Under this employer's union agreement on February 28, 1977, this employer did properly determine that the *claimant accepted a leave of absence* from it. Such implied acceptance continued during the weeks ending March 1, 1977, up to and including the week ending June 25, 1977. Then during the weeks ending July 2, 1977, up to and including the week ending September 24, 1977, the claimant was on a leave of absence for which she had applied. Therefore, during the weeks ending March 5, 1977, up to and including the week ending September 24, 1977, are not weeks for which the Indiana Employment Security Division is thus mandated to reconsider the claimant's claim for unemployment benefits. However, the claimant did not apply for or accept the leave of absence from her separating employer for the weeks ending January 15, 1977, up to and including the week ending February 26, 1977. Therefore, from the foregoing findings, it is concluded that the Indiana Employment Security Division is mandated to reconsider the claimant's claim for unemployment benefits since she did not receive benefits for such weeks and was separated from employment during such weeks due to pregnancy.

DECISION: The Notice of Claim Denial is hereby modified and affirmed in part and reversed in part. The claimant's application for benefits is denied for the weeks ending March 5, 1977, up to and including the week ending September 24, 1977. However, the Indiana Employment Security Division should reconsider the claimant's claim for unemployment benefits for the weeks ending January 15, 1977, up to and including the week ending February 26, 1977."

(Emphasis added).

Shortridge appealed to the Review Board from that portion of the referee's decision which found her not to be within the plaintiff subclass B(1) between February 28, 1977, when Allison placed her on leave without her knowledge or consent, and June 27, 1977 when she applied for and accepted a leave of absence from Allison and received the six weeks of disability

benefits to which she was entitled under the employer's disability insurance plan. The Review Board affirmed the appeals referee's decision.

## ISSUES

On appeal, Shortridge raises several issues.[3] We need only address the following:

Whether principles of res judicata require the Review Board in 1984 proceedings to adhere to its earlier June 10, 1977 finding of fact that Shortridge did not apply for or accept a leave of absence?

## DECISION

*Standard of Review*

The Court of Appeals has exclusive, original jurisdiction to review decisions of the Review Board of the Indiana Employment Security Division for errors of law pursuant to IND.CODE § 22–4–17–12.[4] The Court of Appeals' responsibility on review is to determine whether the decision of the review board is reasonable in light of its findings. *Whirlpool Corp. v. Review Board* (1982), Ind.App., 438 N.E.2d 775;

*Batts v. Review Board of Indiana Employment Security Division* (1979), Ind. App., 385 N.E.2d 1174. As a general rule, as to all questions of fact, the decision of the Review Board is conclusive and binding. The Court of Appeals is limited to examination of evidence and reasonable inferences drawn therefrom which would support the Board's decision. The court must accept the facts as found by the Review Board unless its findings fall within one of the exceptions for which the court may reverse.[5] *See, Ryba v. Review Board of Indiana Employment Security Division* (1982), Ind.App., 435 N.E.2d 78; *Marozsan v. Review Board of Indiana Employment Security Division* (1982), Ind. App., 429 N.E.2d 986; *Alcoa v. Review Board of Indiana Employment Security Division* (1981), Ind.App., 426 N.E.2d 54.

It is the Review Board's duty to make findings that reveal its analysis of the evidence and that are specific enough to permit the Court of Appeals to intelligently review the board's decision. *Ball v. Review Board of Indiana Employment Security Division* (1984), Ind.App., 464 N.E.2d 1312. The decision of the Review

---

**3.** Shortridge also claims on appeal the Review Board's 1984 decision is contrary to the federal court order because (1) it refuses to reopen its 1977 decision which denied benefits by application of the unconstitutional statute; (2) the employer is estopped from arguing Shortridge accepted a leave of absence in 1977 because the employer succeeded in defeating her claim in 1977 on grounds she had not applied for or accepted a leave of absence; and, (3) the Review Board's finding Shortridge impliedly accepted a leave of absence in February 1977 is contrary to the evidence.

**4.** IND.CODE § 22–4–17–12 provides:

"(a) Any decision of the review board shall be conclusive and binding as to all questions of fact. Either party to the dispute or the director may, within thirty (30) days after notice of intention to appeal as provided in this section, appeal the decision to the court of appeals of Indiana for errors of law under the same terms and conditions as govern appeals in ordinary civil actions ...

(f) The appellant shall attach to the transcript an assignment of errors. An assignment of errors that the decision of the review board is contrary to law shall be sufficient to

present both the sufficiency of the facts found to sustain the decision and the sufficiency of the evidence to sustain the findings of facts. In any appeal under this section to bond shall be required for entering the appeal."

I.C. 22–4–17–12 (Burns Code Ed.Repl.1985).

**5.** The Court of Appeals may review the evidence supporting the findings of the Review Board if it appears that:

(1) The evidence on which the Review Board based its finding was devoid of probative value;

(2) The quantum of legitimate evidence was so proportionately meager as to lead to the conviction that the finding does not rest upon a rational basis;

(3) The result of the hearing before the Review Board was substantially influenced by improper considerations;

(4) There was no substantial evidence supporting the findings of the Review Board;

(5) The order of the Review Board, its judgment or finding, is fraudulent, unreasonable or arbitrary;

(6) The Review Board ignored competent evidence;

*Williamson Co. v. Review Board* (1969), 145 Ind.App. 266, at 270, 250 N.E.2d 612, at 616.

Board must contain all specific facts relevant to the contested issues so that the Court of Appeals may determine whether the Board has resolved such issues in conformity with the law. *Pierce Governor Co. v. Review Board of Indiana Employment Security Division* (1982), Ind.App., 435 N.E.2d 274; *Fuller v. Review Board of Indiana Employment Security Division* (1981), Ind.App., 423 N.E.2d 725. If the decision of the Review Board is not supported by essential findings of facts because a finding of fact essential to the conclusion is missing, the Court of Appeals must remand the cause to the board to discharge its duty to make factual findings and the court may retain jurisdiction. *Pierce Governor Co. v. Review Board of Indiana Employment Security Division* (1982), Ind.App., 435 N.E.2d 274.

With this standard of review in mind, we turn to the issue raised by Shortridge.

## I. *Res Judicata in Administrative Proceedings*

Shortridge claims the Review Board's decision is contrary to law because it refuses to apply the facts as found in the Review Board's 1977 decision in the current proceeding to determine whether or not Shortridge is a member of subclass (B)(1) and therefore entitled to a redetermination of her claim for unemployment benefits from January 15, 1977 through June 25, 1977. Shortridge argues principles of res judicata apply to the Board's 1977 finding of fact that she did not apply for or accept a leave of absence from Allison, and that these 1977 findings of fact clearly show that she is a member of subclass B(1) as defined in the federal court order.

The Review Board asserts its decision not to reopen Shortridge's claim for the period February 26, 1977 through June 25, 1977 is in compliance with the federal order because Shortridge impliedly accepted a leave of absence and is therefore not a member of subclass B(1). The Board argues it properly considered and respected its 1977 decision that Shortridge did not apply for a leave of absence, and the facts

support its most recent, contrary finding Shortridge did impliedly accept a medical leave of absence from Allison on February 26, 1977.

To be a member of subclass B(1) and therefore entitled to a rehearing of her case, Shortridge must show that (1) she is a woman who left work between April 21, 1975 and July 1, 1977 because she was pregnant; (2) she did not apply for or accept a leave of absence under a plan provided by the separating employer; (3) she applied for and was denied Indiana unemployment compensation because she was pregnant; and, (4) she was "otherwise eligible" for Indiana unemployment compensation.

In its 1977 decision, the Review Board made the following finding of fact regarding whether or not Shortridge had applied for or accepted a leave of absence: "she chose not to seek a leave of absence and instead accepted a layoff in lieu of applying for a maternity leave." The Review Board quoted former Chapter 15–1(4) and disqualified Shortridge for benefits because she failed "to apply for or accept a leave of absence under a plan provided by the separating employer." The Review Board further stated Shortridge applied for and was denied unemployment compensation but made no finding regarding her eligibility otherwise.

The Review Board later reviewed the same evidence and found, in its October 31, 1984 decision: (1) Shortridge is a woman who left work on January 14, 1977 because she was pregnant; (2) she did not apply for any leave until the week ending July 2, 1977 when she was placed on maternity leave for six weeks ending September 24, 1977; and, (3) Shortridge impliedly accepted maternity leave when unilaterally placed on such leave by her employer pursuant to the union contract on February 28, 1977 for the weeks ending March 1, 1977 through July 2, 1977. The Review Board made no findings regarding whether Shortridge applied for and was denied unemployment compensation because she was pregnant or whether she was otherwise eligible.

■ We find the principles of the collateral estoppel branch of res judicata[6] require the Review Board to adhere to its earlier findings of fact, specifically: (1) Shortridge left work on January 14, 1977 because she was pregnant; (2) she did not apply for or accept a leave of absence, and (3) she applied for and was denied unemployment compensation. We remand for Board determination of whether Shortridge was "otherwise eligible" for unemployment compensation, the fourth element of subclass B(1) which will be dispositive in determining whether Shortridge is a member of subclass B(1) and therefore entitled to unemployment compensation benefits.

Whether the doctrine of collateral estoppel applies in an administrative determination depends upon the nature of the administrative action involved. Administrative agencies are created by the legislature to fulfill several functions—legislative, executive, and judicial. The doctrine of collateral estoppel has been applied to administrative action in Indiana which is characterized by the courts as "adjudicatory", "judicial", or "quasi-judicial".[7] *South Bend Federation of Teachers*, 389 N.E.2d at 33. Clearly, the Indiana Employment Security Board is acting as an adjudicatory body when hearing and deciding a claim or a petition to reopen unemployment compensation proceedings.

In *South Bend Federation of Teachers*,[8] Chief Judge Buchanan applied the collat-

---

**6.** Chief Judge Buchanan pointed out the differences between res judicata and collateral estoppel in *South Bend Federation of Teachers v. National Education Association* (1979), Ind.App., 389 N.E.2d 23:

" 'Estoppel by judgment' takes place when a prior adjudication on the merits by a court of competent jurisdiction acts as a bar to a subsequent action on the same claim between the same parties or those in privity with them. *Town of Flora v. Indiana Service Corp.* (1943), 222 Ind. 253, 53 N.E.2d 161; *In re Estate of Nye* (1973), 157 Ind.App. 236, 299 N.E.2d 854; *Mayhew v. Deister* (1969), 144 Ind.App. 111, 244 N.E.2d 448.

'Estoppel by verdict' or 'collateral estoppel' finds application when a particular issue is adjudicated and then is put into issue in a subsequent suit on a different cause of action between the same parties or those in privity with them. In such cases the former adjudication of the issue is held to bind the parties or privies of the subsequent suit. *See Town of Flora v. Indiana Service Corp., supra; In re Estate of Nye, supra; Mayhew v. Deister, supra.*"

\* \* \* \* \* \*

Because the concepts of 'claims' and 'causes of actions' are so much less important in administrative proceedings than in court cases, most problems of res judicata in administrative law involve collateral estoppel, for the operation of which the issues must be identical. Only rarely do problems of identity of claims or causes of action arise.
2 K. Davis, Administrative Law Treatise § 18.04 (1958)."
389 N.E.2d at 32.

**7.** Res judicata does not apply to legislative action by administrative agencies. Executive action by administrative agencies is generally ex-amined to determine whether it is similar to judicial function, where res judicata applies, or legislative function, where res judicata does not apply. *See,* 2 K. Davis, *Administrative Law Treatise* § 18.02 (1958); 2 Am.Jur.2d, *Administrative Law* § 497 (1962); *South Bend Federation of Teachers, supra,* 389 N.E.2d at 32–33.

" ... where a statutory right to a hearing involves a fair hearing in what amounts at least to somewhat of a court action, fair play demands the application of the doctrine of res judicata to a prior determination of the agency. The doctrine of res judicata is recognized particularly in regard to those types of administrative action in which the administrative agency is not a party to the proceeding, but adjudicates conflicting claims of the parties coming before it, *such as workmen's compensation proceedings ...*" (Emphasis added).
2 Am.Jur.2d, *Administrative Law* § 497 (1962).

**8.** In that case, the National Education Association and the Federation of Teachers entered into an agreement with the City of South Bend School Corporation in 1972 as to the election procedure to be used to determine the exclusive bargaining representative of its teachers. The 1972 agreement set out the method to be used in the future to challenge the winner's status as exclusive bargaining representative. The NEA won the initial election and obtained certification of its status. Shortly thereafter, the Indiana General Assembly passed the Educational Employee Bargaining Act which provided less stringent procedures for challenging a union's status as exclusive bargaining representative. In a later conflict between the NEA and the Federation of Teachers, the Education Employment Relations Board found the parties bound by the 1972 agreement rather than the less demanding provisions of the Educational Employee Bargaining Act and applied principles

eral estoppel branch of the doctrine of res judicata and held a state agency's interpretation of a contract in one proceeding was binding in a later proceeding involving the same agency, parties, and issues. *South Bend*, 389 N.E.2d at 32. Chief Judge Buchanan cautioned, however, that even though an administrative agency may be exercising a judicial function, there may be reasons not to strictly apply res judicata:

" ... Administrative law must grapple not only with problems of res judicata familiar to the judicial system—identity of claims and issues, identity of parties, final decisions on the merits, collateral attack, jurisdiction—but also with special problems growing out of differences between the judicial process and the administrative process. The principle of res judicata is designed for adjudication, typified by a court proceeding, and many perplexities of res judicata in administrative law concern nonjudicial or unclassifiable functions. Courts normally apply law to past facts which remain static— where res judicata operates at its best— but agencies often work with fluid facts and shifting policies.

\* \* \* \* \* \*

The problem of res judicata in administrative law is to develop a set of rules that are especially designed for the special problems resulting from the differences between the judicial and the administrative processes. The starting point is usually the traditional doctrine as applied to judgments of courts; that doctrine should be qualified or relaxed to whatever extent is desirable for making it a proper and useful tool for administrative justice."

*Id.*, 389 N.E.2d at 33–34 (citing 2 K. Davis, *Administrative Law Treatise*, § 18.01 and 18.04.)

Chief Judge Buchanan concluded that the doctrine of res judicata " ... [applies] to administrative proceedings, judicial in nature, unless a convincing reason is advanced why the first proceeding should not be final".[9] *South Bend*, 389 N.E.2d at 34.

The Review Board fails to assert in its brief any convincing reason to preclude application of res judicata, merely stating in the nine sentences on this issue that the Board properly considered and respected its previous 1977 proceeding and the facts support the later contrary finding. We find no convincing reason the 1977 proceedings should not be considered final. Absent a change of conditions or circumstances, the Review Board should not indiscriminately or repeatedly consider the same evidence and announce a contrary finding. The principles of res judicata seek to guard parties against vexatious and repetitious litigation of issues which have been determined in a judicial or quasi-judicial proceeding. To reopen the question of whether Shortridge applied for and accepted a leave of absence is merely to relitigate the question already determined. The facts have not changed in the interim—but the law has changed, and must now be applied to the facts as found by the Review Board in 1977.

In addition, where retroactive claims of this nature are involved, it is clearly improper for an administrative agency to change its prior factual findings in a man-

---

of the collateral estoppel branch of res judicata to the prior administrative proceeding in which the NEA had obtained certification of its status as exclusive bargaining representative.

**9.** The United States Supreme Court has found the principles of res judicata applicable if the agency was acting in a judicial capacity with disputed issues before it which the parties had · ample opportunity to litigate. *United States v. Utah Construction & Mining Company* (1966), 384 U.S. 394, 421, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642.

A number of our sister jurisdictions have adopted the view that principles of res judicata should be applied if there is reason to settle the issues involved once and for all. *Tidewater Oil Co. v. Jackson* (10th Cir.1963) 320 F.2d 157; *Woodlawn Area Citizens Association, Inc. v. Board of County Commissioners for Prince George's County* (1966), 241 Md. 187, 216 A.2d 149; *State ex rel. Turnbladh v. District Court* (1960), 259 Minn. 228, 107 N.W.2d 307; *City of Jackson v. Holliday* (1963), 246 Miss. 412, 149 So.2d 525; *Lubliner v. Board of Alcoholic Beverage Control* (1960), 33 N.J. 428, 165 A.2d 163.

ner which unjustly precludes relief for women who were intended to obtain relief under the federal judgment. The federal judgment was designed to remedy the application of unconstitutional statutory provisions. Changing the underlying factual findings in cases where the unconstitutional provisions were previously applied undermines the remedial effect of the federal court judgment because, as here, it threatens to deny benefits to individuals who would have received them in the past but for the application of the unconstitutional provision. Consistency in all determinations except the application of the unconstitutional provisions is necessary to remedy the earlier violations.

■ We reverse the Review Board's 1984 finding of fact that Shortridge impliedly accepted a leave of absence when her employer unilaterally placed her on medical leave on February 28, 1977. We hold principles of collateral estoppel require the Review Board to adhere to its 1977 findings of fact, specifically: (1) Shortridge left work on January 14, 1977 because she was pregnant; (2) she did not apply for or accept a leave of absence; and, (3) she applied for and was denied unemployment compensation. We note that an essential finding of fact was missing from the Review Board's 1977 determination, whether Shortridge was "otherwise eligible" for unemployment benefits. We remand this case to the Review Board with instructions to reopen Shortridge's claim to determine only whether she was "otherwise eligible" for unemployment compensation, which requires that she have been able to work, available for work, and actively seeking work. This fourth element of subclass B(1) will be dispositive in deciding whether Shortridge is entitled to unemployment compensation from January 14, 1977 through June 26, 1977.

Reversed and remanded.

CONOVER, P.J., and YOUNG, J., concur.