Sherry L. BLACKWELL, Appellant,

v.

REVIEW BOARD OF the INDIANA DE-
PARTMENT OF EMPLOYMENT AND
TRAINING SERVICES, Michael K.
Bonnell, Joe A. Harris, and Nanette L.
McDermott, and Whitestone Products,
Appellees.

No. 93A02–8911–EX–00616.

Court of Appeals of Indiana,
Fourth District.

Oct. 10, 1990.

Donald R. Lundberg, Gregory L. Volz, Legal Services Organization of Indiana, Inc., Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellees.

MILLER, Presiding Judge.

Sherry L. Blackwell was refused unemployment benefits by the Review Board after her employment with Whitestone Products, in Bloomington, was terminated. The Board determined that, by leaving her work station before the end of the shift because of illness, she had quit her job without good cause. Blackwell appeals the decision, claiming the Board erred in finding that she voluntarily left her employment. She raises several issues, but, because we reverse, we address only the following issues:

I.   Whether there is sufficient evidence that Blackwell intended to quit her employment when she left her work station before the end of her shift because of illness;

II.   Whether the employer's rule *defining* an employee's conduct as voluntary abandonment of employment is sufficient to support the Board's finding that she voluntarily left her employment without good cause; and

III.   Whether the Board's decision can be upheld on the basis that Blackwell was discharged for just cause.

We reverse because the Board's finding that Blackwell voluntarily terminated her employment is unreasonable in light of the circumstances. At the outset, we observe that the issue before the Board (on which the Board found in favor of the employer) was whether Blackwell quit her job—not whether she was discharged. With that in mind, we now review the facts and our decision.

### FACTS

On June 27, 1989, Sherry Blackwell had been employed as a packer for Whitestone Products for almost four years, working the night shift. On that date, Blackwell was lifting heavy boxes off of the top of a skid when she strained herself, causing a hemorrhoid.[1]   Before leaving work that night, she told her supervisor, Rick McGlothlin, that she had developed a medical problem and described the problem in general terms. Due to the nature of the injury, she was having some difficulty explaining clearly to her male supervisor exactly how she had injured herself. Although Blackwell described the injury as being a hemorrhoid at the hearing, the appeals referee chose to describe the injury euphemistically as a "strained back." (R.6–7).

On the following evening, June 28, the claimant returned to work and her hemorrhoid problem bothered her as she was doing her work. She spoke to McGlothlin, reminding him of the medical problem, and requested that she be placed on a different job. She then asked Mona Lawson, who functioned in some type of supervisory capacity, to tell McGlothlin that she was go-

---

**1.**   The Board's findings of fact put the date of injury on June 7, 1989. (R.6, line 53) This is clearly a clerical error, inasmuch as the record consistently places the date of injury on June 27, 1989.

ing to have to leave after her break, that he should try to find someone to relieve her on her job, and that she would obtain a doctor's statement. Mona Lawson conveyed this information to McGlothlin. McGlothlin made adjustments to the break schedule in light of the information that Blackwell was planning to leave. After Blackwell had worked between two and two and one-half hours and just before she was to have taken her break, McGlothlin came out to Blackwell's job station. The record is in conflict as to exactly what was said during the conversation, but the version most favorable to the findings of the Board is that Blackwell told McGlothlin that she was experiencing pain and wanted to know what would happen to her if she left at the break. McGlothlin told Blackwell that he could not give her permission to go home and made no commitment as to what the disciplinary consequences would be if she left, indicating that it would depend upon her record of attendance. However, Blackwell did leave the job premises at her break.

On the following day, June 29, she went to see her doctor about the hemorrhoid. Her doctor gave her a statement advising that she should be on a light lifting restriction for one day since she would be off work on the following weekend. At her doctor's request, she called Whitestone and asked if she could be put on a light duty job that evening. She was then informed over the telephone that Whitestone considered her as having quit when she left the premises the night before. Blackwell gave the doctor's statement to Whitestone at a subsequent interview.

The decision of the appeals referee, adopted by the Board, follows:

## FINDINGS OF FACT

—that the claimant was employed by the instant employer for approximately 4 years as a laborer.

—that on June 7,[2] 1989, the claimant "strained" her back while at work lifting an object.

—that the claimant reported the strain to her supervisor.

—that on June 28, 1989, the claimant was, at her request, placed on a different job which would not put such a strain on her back.

—that the claimant did not initially see a physician concerning her back "strain".

—that on June 28, 1989, the claimant requested permission to leave work based upon back pain.

—that permission was not granted.

—that the claimant never specifically notified her supervisor of her intent to leave work.

—that the claimant presents no evidence before this referee in support of the fact that employer specifically knew that the claimant was leaving work based upon her "strained" back.

—that the claimant walked off the job.

—that the employer considered the claimant to have abandoned her job when she "walked off" without notice to the employer.

—that the claimant was discharged the day she "walked off the job".

—that June 29, 1989, the next day, the claimant went to see a doctor concerning her injury.

—that there existed an employer rule which established as grounds for discharge leaving the job site without permission of supervisor.

—that the rule was uniformly enforced.

—that the claimant was subject to the rule.

—that the reason for the rule was to maintain production and insure a stable work force.

## CONCLUSION

Initially, this referee would note that upon voluntary termination of employment, an employee must establish "good cause" for separation before he/she is eligible for benefits under the Act. "Good cause" has been defined by the courts to mean: first, that the reason for

2. Actually June 27, see footnote 1, *supra.*

leaving employment is such that a reasonable, prudent person, under similar. circumstances would quit; second, that the reason for leaving was "objectively" related to the job. Here, using this definition, and the above cited findings, it is the conclusion of this referee as follows:

—that the claimant voluntarily left employment.

—that the claimant, by leaving employment without notice to her employer, abandoned her employment.

—that the claimant, before this referee, and to her employer, failed to establish good cause for leaving employment.

—that, had the claimant not been determined to have voluntarily left employment, the claimant could have been charged with violation of an employer rule to which she was subject by leaving employment without notice to the employer and have been, therefore, discharged for just cause.

—that, based upon the information presented to this referee, the claimant has failed to establish good cause for leaving employment and is, therefore, not entitled to benefits under the Act.

(Record 6–7).

## DECISION

On review we must determine whether the decision of the Review Board is reasonable in light of its findings. *Shortridge v. Review Board of the Ind. Employment Sec. Div.* (1986), Ind.App., 498 N.E.2d 82, 87. In *Shortridge*, this court observed:

"As a general rule, as to all questions of fact, the decision of the Review Board is conclusive and binding. The Court of Appeals is limited to examination of evidence and reasonable inferences drawn therefrom which would support the Board's decision. The court must accept the facts as found by the Review Board unless its findings fall within one of the exceptions for which the court may reverse."

*Id.* at 87 (citations omitted). Those exceptions include:

(1) The evidence on which the Review Board based its finding was devoid of probative value;

(2) The quantum of legitimate evidence was so proportionately meager as to lead to the conviction that the finding does not rest upon a rational basis;

(3) The result of the hearing before the Review Board was substantially influenced by improper considerations;

(4) There was no substantial evidence supporting the findings of the Review Board;

(5) The order of the Review Board, its judgment or finding, is fraudulent, unreasonable or arbitrary;

(6) The Review Board ignored competent evidence.

*Id.* at 87, n. 5, citing *Williamson v. Review Board of the Ind. Employment Sec. Div.* (1969), 145 Ind.App. 266, at 270, 250 N.E.2d 612, at 616. See also *Arrendale v. Review Board of the Ind. Employment Sec. Div.* (1983), Ind.App., 445 N.E.2d 128.

### Issue I

■ Blackwell contends there is no substantial evidence to support the finding that she voluntarily left her employment. We agree. Voluntarily leaving employment is not defined in the Indiana Employment Security Act. However, our courts have held that some manifestation of intent to quit is necessary to show that a claimant voluntarily left employment. *Cheatem v. Review Board of the Indiana Employment Sec. Div.* (1990), Ind.App., 553 N.E.2d 888; *Moore v. Review Board of the Ind. Employment Sec. Div.* (1984), Ind.App., 461 N.E.2d 737.

The Board's decision is devoid of any findings that Blackwell manifested an *intention* to quit and ignores competent testimony to the contrary. Blackwell's actions were consistent only with a desire and an intent to maintain her employment relationship. She informed her employer when the injury occurred; requested her job responsibilities be adjusted due to the injury; informed her employer when the injury continued to cause her difficulties; and gave her supervisor advance notice she was

planning to leave due to her pain and discomfort before her shift was over in order to give him the opportunity to plan for her absence. She asked her supervisor about possible disciplinary consequences if she left the job site. She also sought medical evaluation of her injury, and obtained written medical recommendation that she be assigned to light duty tasks. Furthermore, she notified her employer, Whitestone, of the doctor's recommendation the following day and delivered the doctor's statement to them at that time. The only work she missed was the balance of the June 28 shift. Therefore, we find there was no evidence that Blackwell intended to quit her employment when she walked out because she was too ill to continue working that day.

### Issue II

▮ The Board contends that the real issue in this case is whether Blackwell left the worksite without specifically notifying and receiving permission of her supervisor, in violation of company policy. It argues that her reason for doing so, and the employer's knowledge of that reason, are not germane to the issue of whether Blackwell voluntarily quit. It claims that an employer rule defined Blackwell's action of leaving her workplace without "specifically notifying her supervisor" as a voluntary abandonment of employment. It argues that "there is sufficient evidence to support a reasonable conclusion that the Claimant voluntarily quit her employment, and a reasonable person would not be bound to find otherwise." (Appellee's Brief, p. 15–16.) Implicitly, the Board acknowledges that, absent the employer's rule, there is no evidence that Blackwell intended to quit.

We have several problems with the Board's position. First, we disagree that Blackwell's reasons for leaving are not germane to the issue of whether she violated an employer rule or whether she quit her employment. Contrary to the Board's argument, in reviewing a determination as to whether a claimant voluntarily quit employment, disqualifying her from benefits, a consideration of the circumstances surrounding her leaving is necessary. *Arrendale, supra.*

Second, we also find the evidence of the employer rule is so meager here that it is devoid of any probative value. *Williamson, supra.* There was no written copy of the employer rule produced at the hearing. Whitestone, represented by Karl Hershberger who was in some type of management position, testified to the employer's position as follows:

A. The employer's position is that due to the fact that she did not tell the supervisor when she was leaving the building that's ... considered to be a voluntary quit. We do have a ruling in the ... of which is on the board. In the company rules it states also that if a company ... that *if the employee does not notify their [sic] supervisor when they [sic] leave the premises unless it's to clockout at the end of the shift to go home or they went out to eat lunch or something like that* then it's *dismissal, which we ... we consider to be a voluntary quit.*

Q. So you say there's a rule that says that leaving without permission?

A. Yes *without the supervision ... supervisor's permission*

Q. *Is grounds for discharge?*

A. Uh-huh.

Claimant: So I was discharged (inaudible)

A: Well....

Q: Wait a minute. Let me ask the questions please.

(R.36–37) (emphasis added)

Even if the rule is relevant to whether Blackwell quit her job, we do not know what the rule is. Initially, on the Determination of Eligibility Form sent to Blackwell when she was denied unemployment compensation, Whitestone's contention was that the company policy was that the employee "make her supervisor *aware* if she leaves....". (R.41, emphasis added) At the hearing in this matter, Hershberger initially testified that, if the employee does not *notify* the supervisor when she leaves, then it is a dismissal. After a leading question by the referee, Hershberger seemed to indicate that the rule was leav-

ing *without the supervisor's permission,* and, that this was *grounds for discharge*— implying that it was not an automatic dismissal. Also, he qualified the rule by saying it is a dismissal, unless the employee is clocking out to go home at the end of the shift, or going out to eat lunch or "something like that". This is ambiguous because we do not know what other actions might be permitted under the rule. Furthermore, he stated that a violation of the rule is a dismissal, then added that "we consider" it to be a voluntary quit. Because the rule was not produced, we do not know whether the employees are informed that the prohibited conduct—whatever it is—results in a dismissal—a discharge—or whether the employees are informed such conduct is a quit. We also do not know how the rule is enforced—whether it results in an automatic discharge or is considered in light of the employee's work history. We do not know if the rule requires the employee to personally give notice to the supervisor or, if, in an emergency situation, the employee might ask a coworker to inform the supervisor.

We cannot sustain the Board's decision on the basis of an employer rule which defines conduct of an employee as a voluntary quit when it is unclear what that rule requires. As a matter of law, unless the parties stipulate to what the rule states, if the rule is not reduced to writing when introduced into evidence, it is impossible for this court to fairly and reasonably review the Board's decision. For example, in *Citizens Gas and Coke Utility v. Review Board of the Ind. Employment Sec. Div.* (1984), Ind.App., 471 N.E.2d 1175, this court concluded that an employee, who allegedly violated an employer's work rule on absenteeism and tardiness, was not discharged for just cause. The court, affirm-

ing the Board's decision, found the employer's policy was vague and overbroad, unreasonable and unintelligible, and that even if reasonable, the evidence was of minimal probative value.

The present case is unlike *Jeffboat, Inc. v. Review Board of the Ind. Employment Sec. Div.* (1984), Ind.App., 464 N.E.2d 377, where an employee's violation of an employer rule dealing with absenteeism constituted just cause for discharge, even though the employee's absence was justified by illness. In *Jeffboat* the written rule—a collective bargaining Program— was introduced into evidence. The claimant also acknowledged he was aware of the Program.

Here, we do not know what the rule requires and there is no evidence of any substantial probative value that Blackwell knew about the rule. The Board contends that Blackwell's statement to Mona Lawson that her supervisor could "write me up" is evidence that she knew she was violating an employer's rule when she left the premises. However, that statement is ambiguous as to whether Blackwell knew she was violating a rule that would cause her to be discharged or merely indicated that she knew she would be subject to disciplinary proceedings. This ambiguous statement is insufficient evidence she intended to sever her employment relationship in light of other competent evidence. For example, there would be no reason to obtain a doctor's statement for an assignment to light duty if she knew her employer considered her to have already quit.

The statute provides that unemployment compensation may be denied to employees who voluntarily quit without just cause, IC 22-4-15-1(a), and to employees who are discharged for just cause, IC 22-4-15-1(d).[3]

---

**3.** Discharge for just cause is defined by IC 22-4-15-1(d) in include, but not be limited to the following:

(1) separation initiated by an employer for falsification of an employment application to obtain employment through subterfuge;

(2) *knowing violation of a reasonable and uniformly enforced rule of an employer;*

(3) unsatisfactory attendance, if the individual cannot show good cause for absences or tardiness;

(4) damaging the employer's property through willful negligence;

(5) refusing to obey instructions;

(6) reporting to work under the influence of alcohol or drugs or consuming alcohol or drugs on employer's premises during working hours;

Generally, when an employer discharges an employee, it precludes a determination that the employee voluntarily quit. However, there are limited situations where an employer may treat employee actions as being a voluntary quit.[4] For example, the Board relies on *Dozier v. Review Board of the Ind. Employment Sec. Div.* (1982), Ind. App., 436 N.E.2d 373, where a claimant had been on sick leave and was scheduled to return to work. When she was examined by her physician, he informed her she should remain off work an additional week. However, claimant never informed her employer an extension of medical leave was needed. This court affirmed the Board's finding that the claimant voluntarily left employment without good cause. The situation in *Dozier* is distinguishable from the present case because there was evidence Dozier (1) had been warned, (2) had made no attempt to correct the situation, and (3) did not give her employer the doctor's certification indicating a need for the extended leave.

In *Williamson, supra,* the claimant was discharged for leaving the work place before the end of his shift. Like Blackwell, Williamson claimed he was ill and produced a doctor's statement. This court concluded Williamson voluntarily left his employment without good cause. However, *Williamson* is also distinguishable from the present case because there was evidence that Williamson left for reasons other than illness—a dispute over a demotion and resulting cut in pay. Additionally, Williamson was specifically told that if he left he would be discharged. It was therefore de-

termined that he left intending to sever his employment relationship. In the present case, it is undisputed that Blackwell asked about the consequences of leaving early and was told it would depend her work record. There is no evidence that Blackwell knew that leaving early would terminate her employment.

In *Jones v. Review Board of the Ind. Employment Sec. Div.* (1982), Ind.App., 442 N.E.2d 1120, this court found there was no evidence that an employee voluntarily quit and reversed the Board's decision. Jones arranged transportation to work with a co-worker. The co-worker moved without informing Jones. The first day after the other employee moved, Jones waited for his ride in the rain. When the ride did not come, he assumed there was no work because of the rain. The next day Jones' employer notified him that he was discharged. On review, this court found no evidence demonstrating Jones quit work, but that he merely failed to show up for work. Judge Young, writing for the majority, observed that, "while absenteeism from work without permission may constitute just cause for dismissal, it does not constitute a voluntary quit unless it becomes so through the lapse of an unreasonable amount of time." *Id.* at 1122-23.

The above cases—*Dozier, Williamson,* and *Jones*—support the proposition that an employer may define an employee's actions as a voluntary quit when the employer is merely acknowledging an accomplished fact—the employee's abandonment of employment, i.e., a lengthy absence without explanation, or failure to take

---

(7) conduct endangering safety of self or co-workers; or
(8) incarceration in jail following conviction for a misdemeanor or felony by a court of competent jurisdiction or for any breach of duty in connection with work which is reasonably owed an employer by an employee.

**4.** Other jurisdictions look upon the "constructive voluntary leaving" and "provoked discharge" doctrines with skepticism. See *Allen v. Core Target City Youth Program* (1975), 275 Md. 69, 338 A.2d 237. (statutory disqualification for persons who leave work without good cause means that employee must have intended to relinquish employment relationship—employee actions must amount to abandonment of em-

ployment); *Brousseau v. Maine Employment Security Commission* (1984), Me., 470 A.2d 327; *James v. Levine* (1974), Ct.App.N.Y., 34 N.Y.2d 491, 358 N.Y.S.2d 411, 315 N.E.2d 471, (doctrine is a fiction, the real cause of discharge is misconduct; limits placed on use of the doctrine in New York); *DeGrego v. Levine* (1976), Ct.App. N.Y., 39 N.Y.2d 180, 383 N.Y.S.2d 250, 347 N.E.2d 611, ("Provoked discharge" is "a narrowly drawn legal fiction designed to apply where an employee voluntarily engages in conduct which transgresses a legitimate known obligation and leaves the employer no choice but to discharge him." *Id.* 383 N.Y.S.2d at 251, 347 N.E.2d at 613.)

steps to preserve the employee's relationship with the employer. However, that is not the case here where Blackwell was only absent from work the balance of the June 28 shift—about five hours—and she took steps to preserve her employment relationship. Therefore, we cannot agree that Blackwell's actions amount to an abandonment of employment or that Blackwell voluntarily terminated her employment, and we find that she did not quit.

■ Even if we could agree that Blackwell voluntarily left her employment, we could not agree that she did not have good cause for doing so. The unemployment compensation statute provides that an individual whose unemployment is the result of a medically substantiated disability shall not be disqualified from benefits. IC 22-4-15-1(c)(2). It is undisputed that Blackwell was injured at work on the day prior to her discharge. The Board also specifically found that she asked her supervisor for permission to leave due to pain, but permission was refused. Her supervisor testified that although Blackwell did not "specifically" say she was leaving, he understood that "she had to leave and she could not possibly stay ..." (R.30). It is also undisputed that she sought medical care upon leaving the worksite and delivered a doctor's statement to Whitestone the following day. Therefore, under these circumstances, we find the Board's decision that she voluntarily left employment without good cause is unreasonable and contrary to the policy and goals of the Indiana Employment Security Act.

## Issue III

■ The Board concluded that Blackwell left her employment without good cause, but stated that she could have been discharged for just cause. Therefore, the Board argues, the decision can be upheld on the basis that Blackwell could have been discharged for just cause for violation of an employer rule. The Board claims that there is ample evidence to support a finding that she was discharged for just cause. The Board cites *Moore v. Review Board of the Ind. Employment Sec. Div.* (1984), Ind. App., 461 N.E.2d 737,[5] for the proposition that alternative findings—a voluntary quit and justifiable discharge—may be supported by the same set of facts and circumstances. However, the Board ignores the result in *Moore.* Moore informed his employer that his sister had been hospitalized and that he would be absent a few days to look after her. On the first day, Moore's mother called in stating he would be off that day. The next day Moore called stating he would be off another day. On the third day, the employer telephoned Moore's mother and informed her Moore's employment had been terminated. When Moore applied for unemployment compensation, his request was denied due to an initial determination that he had voluntarily left employment without just cause. The Board adopted the referee's decision and Moore appealed. This court reversed, finding Moore's statement to his employer—that he would be off a few days—was ambiguous, but did not establish that Moore quit his job. The court also found that the employer did not establish any evidence of a uniform plan for unexpected absences. In the present case, just as in *Moore,* there is insufficient evidence to support a finding that Blackwell was discharged for just cause.

Additionally, we observe that whether Blackwell was discharged for cause was not an issue.[6] Whitestone did not file any cross-errors in this matter. We do, however, point out that, under IC 22-4-15-

---

**5.** *Moore* cites *Dozier, supra.*

**6.** The exhibits in the record reveal the issue involved to be a voluntary quit, not discharge:

  1). Request for appeal to Review Board "Point in dispute: voluntarily left employment without good cause in connection with the work." (R.3).

  2). Referee Docket, Exhibit # 3, Form 605

"Issue Involved: whether the claimant voluntarily left his/her employment without good cause in connection with the work." Chapter 15–1 (R.43).

3). Notice of Appeals Referee Hearing, Exhibit # 4

"Issue Involved: Whether the claimant voluntarily left his/her employment without good cause in connection with the work." Chapter 15–1 (R.44).

1(d)(2), an employee can be discharged for a *"knowing violation* of a reasonable and uniformly enforced rule of an employer." This language has been interpreted by our court to mean that misconduct, justifying the discharge of an employee and causing ineligibility for unemployment compensation, must be a knowing, *deliberate* violation of the employer's rules, willful or wanton, or done with a wrongful intent. *Moore, supra.* As noted above, there is insufficient evidence that Blackwell knew about the rule—even if we knew what the rule required.

Furthermore, the only evidence to support the Board's conclusion that the rule was uniformly enforced was Hershberger's bare assertion that it was. That is not evidence of substantial probative value. Hershberger's statement presents a mere conclusion that the rule was uniformly enforced which is contradicted by other competent testimony of a factual nature. Blackwell's supervisor testified as follows:

Q. Well, she didn't tell you she was leaving?

A. She asked me ... after she told me that she was in pain, she said what would happen if I leave?

Q. Uh-huh.

A. And I said, "Well, *I really can't tell you what's going to happen when you leave." "I'll have to look at your attendance and see if you're under violation and see how badly you're under attendance violation, and then I have to take it from there."* Says, "Well, I don't know if I'm going to be able to stay or not." Says, "I really don't know if I'm going to be able to make it", and I said, "Well, I'm not giving you permission to go home", she said, "Okay, so I was done working on the thing that I was working on which was the sealer,

and I left." Well, breaks ... you know ... took place and when it was time for her break to be over, she was no longer there; so I realized that she had left.

Q. Uh-huh.

A. So we got Rhonda and covered for her absence on the line. She never walked up to me and said, "Rick, I'm leaving." She never told me at any point and time that she was definitely leaving. She was asking what if's ... what if I leave what would happen if I leave, and I gave her the answer to those questions. And by that I ... I took it that she meant that she was coming to tell me that she had to leave and she could not possibly stay, but she never told me that she just left.[7]

(R.29–30) (Emphasis added).

Hershberger stated the rule was uniformly enforced, but also stated that a violation of the rule resulted in dismissal unless "it's to clockout at the end of the shift to go home or to eat lunch or something like that".[8] The testimony of Hershberger and McGlothlin indicate that a violation of the rule would not necessarily result in an automatic discharge but would be considered in connection with an employee's work record and the employee's reason for leaving. There was no other testimony showing how the employer's rule was enforced.

In *Frank v. Review Board of the Ind. Employment Sec. Div.* (1981), Ind.App., 419 N.E.2d 1318, this court reversed a Board decision denying a claimant compensation. This court concluded that while Frank's employer may have been justified in discharging him, Frank could not be denied benefits unless the employer established "Frank 1) knowingly violated 2) a reasonable and 3) uniformly enforced rule." *Id.* at 1319. Frank was discharged for taking a lunch break twenty-two minutes

---

7. McGlothlin's testimony also clearly shows that he understood that Blackwell "had to leave" and "could not possibly stay". If the employer rule requires the employee to notify the supervisor before leaving, it is obvious that she fulfilled the requirement notwithstanding the fact that she did not "specifically" say the words "I am leaving".

8. We find the "something like that" phrase to be ambiguous and wonder why a person who is too ill to work would not fall in that category. Furthermore, a rule that would force a person to choose between working in pain or being discharged appears to be a per se unreasonable rule. See Judge Sullivan's dissenting opinion in *Jeffboat, supra,* at 382 and majority opinion in *Love v. Heritage House Convalescent Center* (1983), Ind.App., 463 N.E.2d 478.

before his scheduled time and leaving the selling floor without permission. However, the evidence presented by the employer did not demonstrate that the offense would result in automatic discharge in every case. In *Frank,* as in the present case, there was no direct evidence that the employer's work rule was uniformly enforced. Additionally, there was no finding that the rule was reasonable. See *Smithson v. Review Board of the Ind. Employment Sec. Div.* (1983), Ind.App., 446 N.E.2d 1014, reversing a decision of the Board where there was no finding regarding uniform enforcement of the rule or its reasonableness.

In other words, the Board's decision cannot be sustained on the basis of a discharge for cause because there is insufficient evidence to support findings on four necessary sub-issues: (1) whether there was an employer rule (and what the rule required); (2) whether Blackwell knowingly violated the rule; (3) whether the rule was reasonable; and (4) whether the rule was uniformly enforced. *Jeffboat, supra.* See also, *Ryan v. Review Board of the Ind. Employment Sec. Div.* (1990), Ind.App., 560 N.E.2d 112 (reversing the Board's decision where there were no findings to support a uniformly enforced rule). Therefore, we reverse the Board's decision and remand with instructions to reinstate Blackwell's benefits.

CONOVER and STATON, JJ., concur.