Esteban **RODRIGUEZ**, Appellant,

v.

**TEXAS EMPLOYMENT COMMISSION and Eagle Warehouse Grocery,** Appellees.

No. 04–96–00137–CV.

Court of Appeals of Texas, San Antonio.

Dec. 4, 1996.

Javier Riojas, Texas Rural Legal Aid, Inc., Eagle Pass, for appellant.

Claudio Heredia, Knickerbrocker, Heredia, Jasso, Dovalina & Stewart, Eagle Pass, Thomas H. Crofts, Jr., Stephen Edward McCleery, Crofts, Callaway & Jefferson, P.C., San Antonio, Robert J. West, Assistant Attorney General, Taxation Division, Austin, for appellee.

Before RICKHOFF, GREEN and DUNCAN, JJ.

## OPINION

RICKHOFF, Justice.

Esteban Rodriguez, appellant in this cause, was denied unemployment benefits by the Texas Employment Commission, which found that he was terminated from his job with Eagle Warehouse Grocery for misconduct connected with his job. He appeals the trial court's grant of summary judgment in favor of the TEC and Eagle. Because appellant seeks a fact-based inquiry which is foreclosed by our standard of review, we affirm the judgment of the trial court.

## FACTS

The facts are largely undisputed. Esteban Rodriguez was a meat counter sales clerk for Eagle Warehouse Grocery in Eagle Pass. He customarily arrived at work about 25 minutes before his shift began and read the morning newspaper before clocking in. On the morning of August 19, 1993, Rodriguez

was at his customary spot by the time clock waiting to punch in and begin his shift. There were four employees working at that time—two were in back with a truck, one was stocking groceries and one, Maribel Perez, was running a cash register at the front of the store.

About five minutes before his shift began, the cashier asked Rodriguez to help an elderly customer with her groceries. Rodriguez refused, saying he was "off the clock;" he refused to help the customer with her groceries, refused to clock in early as requested by the cashier and later admonished the cashier that carrying out groceries for customers was not his job. The cashier got the grocery manager, who was stocking, to help the customer instead and reported the incident to the manager.

Rodriguez clocked in and worked his shift. After his shift, an angry store manager confronted him about his refusal to help the customer. He told Rodriguez he was suspended for three days without pay for declining to help the customer, at which time they would discuss "whether he still had a job." Rodriguez pressed the manager for a decision on the spot, at which point the manager fired Rodriguez.

Rodriguez applied for unemployment benefits; the application was denied on grounds that Rodriguez had been fired for misconduct relating to his job. TEX.LAB.CODE ANN. § 207.044 (Vernon 1996). An initial hearing confirmed this decision; a divided Texas Employment Commission affirmed.

Rodriguez then sought judicial review in the district court. Both parties filed motions for summary judgment; the court granted defendants' motion and denied Rodriguez'. He now appeals to this Court.

## STANDARD OF REVIEW

Decisions of the Texas Employment Commission are subject to a *de novo* standard of review. TEX.REV.CIV.STAT.ANN. art. 5221b–4(i) (Vernon 1987). Texas courts interpret this statutory *de novo* review of the actions of administrative agencies to include a substantial evidence component:

This term as applied to reviews of administrative orders has come to have a well-defined significance in the decisions of this state, and as a rule has been taken to mean a trial to determine only the issues of whether the agency's ruling is free of the taint of any illegality and is reasonably supported by substantial evidence.

*Fire Department of City v. City of Fort Worth,* 147 Tex. 505, 217 S.W.2d 664 (1949). The Texas Supreme Court has specifically extended this standard to decisions of the Texas Employment Commission. *Mercer v. Ross,* 701 S.W.2d 830 (Tex.1986).

Under this standard of review, the party disputing the result has the burden of showing that the agency's decision was not based on substantial evidence. *Mercer,* 701 S.W.2d at 831. The reviewing court may not set aside such a decision because it would reach a different conclusion; it may only do so if that decision was made without regard to the facts or the law and so was unreasonable, arbitrary or capricious. *Id.* It is not the reviewing court's place to resolve factual conflicts and ambiguities; the reviewing court is concerned only with the reasonableness of the administrative order, not its correctness. *Firemen's and Policemen's Civil Service Commission v. Brinkmeyer,* 662 S.W.2d 953, 956 (Tex.1984).

Moreover, "substantial evidence" does not necessarily mean a preponderance of the evidence. "Although substantial evidence must be more than a mere scintilla, it need not be a preponderance. In fact, the evidence may be substantial and yet greatly preponderate the other way." *Olivarez v. Aluminum Corp. of America,* 693 S.W.2d 931, 932 (Tex.1985).

## SUBSTANTIAL EVIDENCE

Rodriguez' first point of error complains that there was not in fact substantial evidence to support TEC's decision to deny benefits. At oral argument, this argument centered on the contention the TEC panel did not give enough weight to his testimony that his supervisors had ordered him not to clock in before his regular starting time without their permission, and that the cashier did not have the authority to tell him to clock in.

However, at the TEC hearing Rodriguez' supervisors provided directly contrary testimony. They said Rodriguez and any other employee had been encouraged to clock in and render service in such an emergency, and that employees had been told they would be paid for such service. Evidently the TEC resolved this conflict in his employer's favor, and our standard of review requires us to defer to the TEC's resolution of such fact-based conflicts. *See Brinkmeyer*, 662 S.W.2d at 956.

Rodriguez' second point of error contends that the TEC decision is contrary to the law because the facts show that Eagle expected Rodriguez to work for free, and because the decision ignores federal law implications, particularly the interplay with Fair Labor Standards Act and the Thirteenth Amendment to the U.S. Constitution. We address these contentions briefly.

 Rodriguez' argument is based on Tex.Labor Code Ann. § 201.012(b) (Vernon 1996):

> The term "misconduct" does not include an act in response to an unconscionable act of an employer or superior.

Rodriguez argues that requiring him to punch in early to help a customer with her groceries is an unconscionable act by the employer, which makes him eligible for unemployment compensation. Implicit in this argument is the assertion that Rodriguez was expected to do this *gratis*. There was no evidence in the record of the TEC hearing below that Rodriguez was expected to work for free; to the contrary, Rodriguez' supervisors again testified that he would have been compensated. In any case, this contention was for the finder of fact, here TEC, to decide, and we find substantial evidence in the record to support this.

Secondly, Rodriguez argues that the decision of the TEC ignores the policies of federal law, particularly the federal Fair Labor Standards Act and the Thirteenth Amendment to the U.S. Constitution banning involuntary servitude. Again, while appellant seeks to cast these issues in the guise of questions of law, we think the question of whether or not Rodriguez was being compelled to work without compensation is a question with conflicting evidence in the record which TEC evidently settled in Eagle's favor; it is not the place of this Court to disturb findings of fact which are supported by the record. *See Brinkmeyer*, 662 S.W.2d at 956.

Rodriguez was represented in this case, in the trial court and on appeal, by Texas Rural Legal Aid ("TRLA"), a publicly funded legal services agency. This Court appreciates the important role TRLA plays in providing needed legal services to those who otherwise cannot afford them. In light of this mission, this Court would encourage TRLA to take care in the future to see that its scarce resources—and the resources of this Court—are expended wisely.

The decision of the trial court is **AFFIRMED.**