DEMARSH V. TWC

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-081-CV

GERALD DEMARSH, SR. APPELLANT

V.

TEXAS WORKFORCE COMMISSION; APPELLEES

MRS. CASSIE CARLSON REED; 

MRS. COURTENAY BROWNING, 

UNEMPLOYMENT APPEALS DIRECTOR;

AND J. L. MYERS COMPANY 

------------

FROM COUNTY COURT AT LAW NO. 2 OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant, Gerald DeMarsh, Sr., a pro se litigant, appeals the trial court’s judgment affirming the Texas Workforce Commission’s (“TWC”) denial of unemployment compensation benefits.  Appellees are theTWC, Cassie Carlson Reed, Courtenay Browning, and J.L. Myers Company (“JL Myers”)
.  

Factual and Procedural Background

On March 11, 2002, Appellant began working for JL Myers, a gas and oil production company, as a driller.  In addition to drilling duties, Appellant was responsible for hiring help to operate the rig.  On March 13 or 14 of the same year, Appellant voluntarily left his employment with JL Myers.  Appellant claims that he left because the drilling equipment used by JL Myers was “junk” and the drilling rig was the poorest maintained rig he had ever been on in over fifty-four years of work in the oil well drilling business.  According to Appellant, he told his supervisor, Clifton Williams, that repairs needed to be made to the rig.  However, Appellant acknowledges that he did not comment on the condition of the rig when he quit or state that he was quitting over concerns for his safety.

Appellees claim that Appellant left because it was too difficult to hire help on the rig.  According to Appellees, Appellant discharged the help that existed on the rig when he was hired and then hired his own inexperienced sons to operate the rig.  One of Appellant’s sons quit after the first day.  Appellant’s other son worked for two or three weeks before developing a hernia problem for which JL Myers compensated him through workers’ compensation.  When asked at trial if the reason he gave for leaving was that he was having trouble finding help, Appellant replied, “[w]ell, that was part of it.  My son quit, and he  -- I couldn’t find anybody to work for any 7 or 8 dollars an hour.”  

 Appellant filed for unemployment benefits in March 2002.  The TWC determined that Appellant was not entitled to compensation because he voluntarily left his work without good cause.  At the request of Appellant, the TWC Appeal Tribunal reviewed the decision and affirmed the TWC’s denial of unemployment benefits.  In summary, the tribunal found:

Appellant quit and informed JL Myers’ secretary that he would not return because it was too difficult to find help.

Appellant was responsible for hiring hands, and discharged 

other hands to hire his own sons.  

Appellant believed the rig was unsafe. 

Appellant did not raise safety issues with his supervisor because he believed it was the supervisor’s job to ensure that the rig was safe. 

The rig was regularly inspected and found free from major violations. 

Appellant’s failure to have enough workers resulted from his own actions.  

Appellant did not overcome his burden of proving by a preponderance of the evidence that the rig was unsafe because he did not give JL Myers the opportunity to address the safety issues before quitting.  

Appellant voluntarily quit without good cause connected with the work when work was available.

Appellant is disqualified from receiving temporary extended unemployment insurance benefits.  

Thereafter, Appellant made a formal complaint to the Occupational Safety and Health Administration (“OSHA”) on May 31, 2002.  OSHA conducted an investigation and determined that some of the conditions and practices alleged by Appellant could not be substantiated by the compliance officer either through observation or employee interviews.  The hazardous conditions that could be substantiated by the compliance officers included the following:  

A guard on the break line spool cable was not properly aligned to prevent the cable from slipping over the cat head.  

The rig was not equipped with an escape line in case of emergency.  

OSHA issued a Citation and Notification of Penalty to JL Myers on November 27, 2002.

Appellant filed suit in the Denton County Court of Law No. 2 on August 27, 2002, seeking review of the TWC ruling.  Following a bench trial, the trial court affirmed the TWC’s decision.  Findings of fact and conclusions of law were not requested.  However, the trial court’s judgment states:

[T]he Court proceeded to consider the pleadings, evidence, and argument.  After hearing evidence and argument, the Court is of the opinion that the decision of the [TWC] is supported by substantial evidence.

On June 20, 2003, Appellant, pro se, filed his brief with this court.  In his brief, Appellant complains that the trial court erred in upholding the TWC’s ruling because he voluntarily left his employment with good cause.

Standard of Review

Judicial review of a TWC decision raises a question of law reviewed under the substantial evidence rule.  
Firemen’s & Policemen’s Civil Serv. Comm’n v. Brinkmeyer
, 662 S.W.2d 953, 955-56 (Tex. 1984); 
Arrellano v. Tex. Employment Comm’n
, 810 S.W.2d 767, 769 (Tex. App.—San Antonio 1991, writ denied).  Under the substantial evidence rule, agency decisions carry an automatic presumption of validity that a reviewing court cannot ignore or disregard.  
Collingsworth Gen. Hosp. v. Hunnicutt
, 988 S.W.2d 706, 708 (Tex. 1998); 
Mercer v. Ross
, 701 S.W.2d 830, 831 (Tex. 1986). 
 Thus, Appellant has the burden of demonstrating that the TWC decision was not supported by substantial evidence.  
Mercer
, 701 S.W.2d at 831; 
Rock Island Indep. Sch. Dist. v. County Bd. of Sch. Trs.
, 423 S.W.2d 665, 669 (Tex. Civ. App.—Houston [14th Dist.] 1968, writ ref’d n.r.e.).  Appellant must show that the agency decision was “illegal, arbitrary, capricious, unreasonable or discriminatory.” 
 Rock Island
, 423 S.W.2d at 669.  The substantial evidence rule requires Appellant to do more than simply cast doubt upon the TWC’s determination.  
Olivarez v. Aluminum Corp. of Am.
, 693 S.W.2d 931, 932 (Tex. 1985); 
Arrellano
, 810 S.W.2d at 772. 

A guiding principle of the substantial evidence rule is that, when evaluating the evidence, the courts must use a reasonableness standard.  
Brinkmeyer
, 662 S.W.2d at 956; 
Gerst v. Nixon
, 411 S.W.2d 350, 354 (Tex. 1966); 
Fire Dep’t of Ft. Worth v. City of Ft. Worth
, 147 Tex. 505, 217 S.W.2d 664 (1949).  If any reasonable person could have come to the same conclusion as the TWC based on the evidence, the agency’s decision must be upheld, even if the reviewing court would have reached a different conclusion.  
Potts v. Tex. Employment Comm’n
, 884 S.W.2d 879, 882 (Tex. App.—Dallas 1994, no writ).  Where the agency’s decision is shown to be against the great weight and preponderance of the evidence, a court, as a matter of law, is still bound to affirm the agency decision as long as a reasonable person could have reached the conclusion reached by the agency.  
Tex. Employment Comm’n v. Ryan
, 481 S.W.2d 172, 175 (Tex. Civ. App.—Texarkana 1972, no writ).   

Discussion

The Texas Unemployment Compensation Act states that, “[a]n individual is disqualified for benefits if the individual left the individual’s last work voluntarily without good cause connected with the individual’s work.”  
Tex. Lab. Code Ann. §
 207.045(a) (Vernon Supp. 2003).  The TWC defines “good cause” as a cause related to an individual’s work that “would cause a person who is genuinely interested in retaining work to nevertheless leave the job.”  Texas Workforce Commission,
 Appeals Policy and Precedent Manual, 
Voluntary Leave,
 
§ 210.00, 
at
 
http://www.twc.state.tx.us/ui/appl/app_manual.html (Oct. 1, 1996).

Applying the TWC definition, we conclude that the evidence presented at trial supports the TWC’s decision to deny Appellant’s claim for unemployment compensation benefits.  Appellant voluntarily terminated his employment with JL Myers after only a few days without informing the company that he was quitting over safety concerns or providing them with an opportunity to resolve the situation.  A reasonable person genuinely interested in retaining work would afford his employer the opportunity to remedy safety concerns before summarily walking off the job.  Although Appellant testified that he informed Williams of his safety concerns, Appellant also testified:

Q.  Did you at any point in time tell him, we’ve got problems with this rig, and I can’t work out on it anymore unless you fix the rig?

A.  No.  I never did tell him that.  You know, and a person ought to have sense enough to, you know, see a problem and try to remedy it.  

Furthermore, Appellant admitted that one of the reasons he quit was because he was having a hard time finding help.  A reasonable person genuinely interested in retaining work would allow more than three or four days to determine that he could not find anyone to work on the rig for the hourly rate offered by JL Myers. 

This court recognizes that Appellant’s concerns regarding his safety might very well have been justified. It was not unreasonable, however, for the TWC to conclude that Appellant did not have good cause to leave the job.  A TWC determination must not be reviewed for its “correctness,” nor can a court substitute its own judgment for that of the agency.  
Brinkmeyer
, 662 S.W.2d  at 956.  Similarly, an agency ruling may not be set aside merely because there was conflicting or disputed testimony.  
Rodriguez v. Tex. Employment Comm’n
, 936 S.W.2d 67, 69-70 (Tex. App.—San Antonio 1996, no writ); 
Olivarez
, 693 S.W.2d at 932.  Rather, “[r]esolution of factual conflicts and ambiguities is the province of the administrative body.”  
Brinkmeyer
, 662 S.W.2d at 956.  For these reasons, we conclude that the TWC’s determination was supported by substantial evidence.

Conclusion

We overrule Appellant’s sole issue and affirm the trial court’s judgment. 

PER CURIAM

PANEL B: HOLMAN, LIVINGSTON, and DAUPHINOT, JJ.

DELIVERED: November 20, 2003 

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.